2005 WY 54

Laurence and Judi LAUGHTER; Lane and Laura Fillingim; and O.D. and Rosanne Owens, Appellants (Plaintiffs),

v.

BOARD OF COUNTY COMMISSIONERS FOR SWEETWATER COUNTY, Wyoming, a political subdivision of the State of Wyoming, Appellee (Defendant).

No. 04–113.

Supreme Court of Wyoming.

April 28, 2005.

Representing Appellants: Richard W. Walden of Budd–Falen Law Offices, LLC, Cheyenne, Wyoming.

Representing Appellee: Harriet M. Hageman and Kara Brighton of Hageman & Brighton, P.C., Cheyenne, Wyoming; and Jason Petri, Deputy Sweetwater County and Prosecuting Attorney, Green River, Wyoming.

Before HILL, C.J., and GOLDEN and VOIGT, JJ., and KALOKATHIS and DONNELL, D.JJ.

VOIGT, Justice.

[¶ 1] This is an appeal from an order denying summary judgment to the appellant landowners and granting summary judgment to the appellee county. The landowners sought declaratory judgment and other relief in regard to the adoption and implementation of the county's growth management plan. We dismiss the appeal as to the monetary claims and affirm the declaratory judgment.

## ISSUES

[¶ 2] The landowners present the following issues:

1. Whether the Sweetwater County Growth Area Management Plan and Agreement (the Plan) was properly adopted?

2. Whether the Plan is a joint land use plan subject to the provisions of the Wyoming Joint Powers Act, Wyo. Stat. Ann. § 16–1–102 through 16–1–109 (Lexis 1999) and, if so, whether it was adopted in compliance with said provisions?

3. Whether the Plan was properly incorporated into the Sweetwater County Zoning Resolution?

4. Whether the study areas set forth in the Plan were extended in compliance with applicable Wyoming statutes?

5. Whether the Plan and the conditional use permit standards set forth therein are unconstitutionally vague?

6. Whether the conditional use permit process in the Plan constitutes an illegal restraint on the use of land?

7. Whether the application of the Plan to the landowners violated the landowners' substantive due process rights?

8. Whether application of the Plan to the landowners temporarily took the landowners' property in violation of the Wyoming and United States Constitutions?

[¶ 3] The appellee county presents the following issues:

1. Does the landowners' failure to designate an adequate record warrant dismissal of their appeal and the entry of sanctions, including payment of the county's attorney's fees and costs?

2. Did the landowners' claim for compensation fail to meet the requirements of Wyo. Const. art. 16, § 7, thereby constituting an invalid governmental claim?

3. Does an invalid governmental claim deprive the court of subject matter jurisdiction?

4. Did the district court properly grant the county's motion for summary judgment?

## FACTS

[¶ 4] The parties do not challenge the undisputed material facts set forth in the district court's decision letter. The following summary of relevant facts is taken from that decision letter.

[¶ 5] In 1993, the county appointed a task force to revise its existing land use plan. The task force's product, identified herein as

"the Plan," was styled as an agreement and required adoption not just by the appellee, but also by Rock Springs or Green River, or both cities. After a public hearing in 1996, the Plan was adopted by the county, but by neither city. The county then amended the Plan to delete the requirement that it be adopted by the cities and, after another public hearing, adopted the Plan as amended.

[¶ 6] The amendments to the Plan also incorporated it into the county's zoning regulations by stating: "The Growth Management Plan and Agreement shall be considered an integral part of the Sweetwater County Zoning and Subdivision Regulations." This incorporation was confirmed in 1997 by adoption of a resolution whose stated purpose was to ensure that the Plan was "properly enforced through the Zoning Resolution."

[¶ 7] One of the primary purposes of the Plan was to manage growth within the county, especially in the "urbanizing" areas surrounding Rock Springs and Green River. To that end, the Plan contained the following provisions:

> Hillside Protection Study Period—The purpose of this three-year study period is to allow time for Sweetwater County and an appointed ad hoc committee to research and make recommendations on development criteria for lands with slopes of 10% or greater within the urbanizing area.

> Urban Reserve Study Area—The urban reserve study area is an area which will allow established agriculture, grazing, livestock trailing and animal migration uses to continue in the area that has long-term potential for urban growth. This area includes agriculturally designated lands shown on Exhibit "B". During a three-year study period beginning with the date of the adoption of this agreement, Sweetwater County will appoint an ad hoc committee to examine and make recommendations on the future use, acquisition and regulation of these lands.

**5.9.5 Administration of Urban Reserve Study Area**

The purpose of the urban reserve study area is to allow established commercial agriculture, grazing, livestock trailing and animal migration uses to continue on agriculturally-zoned areas within the urbanizing area that have long-term potential for urban growth, while Sweetwater County studies the most appropriate zoning and regulations for the area. These Urban Reserve Areas are zoned agriculture on Exhibit "B". This area shall be under study for a three-year period of time with the option to extend the length of the study period if it becomes necessary. The study period will begin upon the adoption of the agreement.

During this time frame existing commercial[,] agriculture, grazing, livestock trailing, animal migration and oil/gas/mineral extraction are all considered permitted uses within this area. All other proposed uses, including residential accessory use, will require a Conditional Use Permit or a zone change depending on the nature of the application. Each application will be review[ed] on a case-by-case basis. The availability of public water will be a consideration/condition [for] each Conditional Use Permit and/or zone change.

* * *

Concurrent with the adoption of this agreement, Sweetwater County by separate resolution shall amend the Sweetwater County Zoning Resolution to accommodate the Urban Reserve Study Area.

**5.9.7 Administration of Hillside Protection Study Period**

The purpose of this study period is to allow time for Sweetwater County to research and make recommendation on planning strategies which encourage environmentally sound development on hillsides with slopes of 10% or greater located within the urbanizing areas.

* * *

In the Urbanizing Area during the study period, all establishment of uses, construction, development, grading and earthwork on lands with hillsides of 10% or greater will require a Conditional Use Permit and be evaluated on a case-by-case basis.

If more study is needed, this agreement allows Sweetwater County the option to extend the time frame.

Concurrent with the adoption of this agreement, Sweetwater County by separate resolution shall amend the Sweetwater County Zoning Resolution to accommodate the Hillside Study Period.

[¶ 8]  In 1998, the appellant landowners purchased lands within the Urban Reserve Study Area, part of which lands also were within the Hillside Protection Study Area. Consequently, conditional use permits were required for the landowners' proposed new use, described as "hobby ranching." In addition, the county notified the landowners that their lands lay within an existing subdivision and that they would need to obtain a conditional use permit to establish a different use of the property. What followed was a protracted administrative struggle between the parties over the conditional use permit application process. Eventually, after a contested case hearing before an independent hearing examiner, the county issued conditional use permits to the landowners. Over a year later, the landowners presented to the county a claim under the Wyoming Governmental Claims Act (WGCA), Wyo. Stat. Ann. §§ 1–39–101, *et seq.*  (LexisNexis 2003), and subsequently filed this litigation. The district court entered summary judgment in favor of the county on April 14, 2004.

## STANDARD OF REVIEW

■ [¶ 9]  We see no need once again to reiterate our well-known standard for the review of summary judgments. *See Ahrenholtz v. Laramie Economic Development Corp.,* 2003 WY 149, ¶ 16, 79 P.3d 511, 515, *amended on reh'g,* 2003 WY 149A, 82 P.3d 714 (Wyo.2003) and *McLean v. Hyland Enterprises, Inc.,* 2001 WY 111, ¶ 14, 34 P.3d 1262, 1266–67 (Wyo.2001). That same standard applies in declaratory judgment actions. *Pullar v. Huelle,* 2003 WY 90, ¶ 6, 73 P.3d 1038, 1039–40 (Wyo.2003); *Goglio v. Star Valley Ranch Ass'n,* 2002 WY 94, ¶ 12, 48 P.3d 1072, 1076 (Wyo.2002).

## DISCUSSION

### *Motion to Dismiss*

[¶ 10]  The county filed a motion to dismiss this appeal because the landowners did not, contemporaneously with the filing of their appellate brief, serve and file a designation of the record, as is required by W.R.A.P. 3.05(b).  In response to the motion to dismiss, the landowners immediately filed their designation of the record. In an exercise of our discretion under W.R.A.P. 1.03, we denied the motion to dismiss, but we sanctioned the landowners' attorney for the late filing. We decline now to revisit that decision.

### *Governmental Claim*

■ [¶ 11]  The claim presented by the landowners to the county sought compensation for loss of use of the property, devaluation of the property as a result of restrictions placed upon its use, and damages incurred in obtaining allegedly unnecessary and illegal permits. These allegations were characterized in the claim as resulting in inverse condemnation, an unconstitutional taking, and deprivation of due process of law.  In the prayer for relief in their complaint, the landowners sought compensation for these three causes of action, and for "arbitrary and capricious conduct in adopting and implementing" the Plan.

[¶ 12]  The county contended in the district court that the landowners' causes of action were time-barred because their claim for compensation had not been presented within the two-year limitation period of Wyo. Stat. Ann. § 1–39–113(a).[1]  In its decision letter, the district court ruled that inverse condemnation actions are governed by the WGCA, and further ruled that, inasmuch as the landowners' takings and due process claims were analogous to their inverse condemnation claim, "to the extent one cause of action may be time-barred, this Court believes the others would [be] as well."  The district court went on to rule, however, "this Court need not determine whether [the land-

---

1.  "No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission[.]" Wyo. Stat. Ann. § 1–39–113(a). The Plan was enforced against the landowners beginning in October 1998. They did not present their claim to the county until October 2002.

owners'] claims are time-barred, because this Court determines that there has been no temporary taking (or inverse condemnation) herein."

[¶ 13] The landowners' appellate brief contains a concession that inverse condemnation actions are governed by the WGCA and that their inverse condemnation cause of action is, therefore, time-barred.[2] Were that the end of it, it might appear that we need not consider whether the WGCA applies to the other causes of action because the district court made no actual ruling in that regard. However, the county has raised the issue again before this Court, with emphasis upon the issue of subject matter jurisdiction, or rather, the lack thereof.

[¶ 14] This Court has now stated several times that governmental claims must meet the dictates of both the WGCA and Wyo. Const. art. 16, § 7.[3] *Bell v. Schell*, 2004 WY 153, ¶ 10, 101 P.3d 465, 468 (Wyo.2004); *Yoak v. Ide*, 2004 WY 32, ¶ 6, 86 P.3d 872, 874 (Wyo.2004); *Beaulieu v. Florquist*, 2004 WY 31, ¶ 11, 86 P.3d 863, 867 (Wyo.2004) (*Beaulieu II*); *Beaulieu v. Florquist*, 2001 WY 33, ¶ 15, 20 P.3d 521, 527 (Wyo.2001) (*Beaulieu I*). Specifically, such claims must be signed by the claimant and certified to under penalty of perjury, and they must be presented to the governmental entity within two years of the date of the alleged act, error or omission. Unless those requirements have been met, and unless such compliance is stated in the complaint, the district court lacks subject matter jurisdiction. *Bell*, 2004 WY 153, ¶ 36, 101 P.3d at 476; *Lankford v.*

*City of Laramie*, 2004 WY 143, ¶ 22, 100 P.3d 1238, 1244 (Wyo.2004); *Beaulieu II*, 2004 WY 31, ¶ 11, 86 P.3d at 867; *Beaulieu I*, 2001 WY 33, ¶ 14, 20 P.3d at 527.

[¶ 15] That is not the end of the matter, however. By its own terms, the WGCA applies only to claims and actions brought "under this act. . . ." Wyo. Stat. Ann. § 1–39–113(a). Article 16, § 7 of the Wyoming Constitution, on the other hand, applies to *all* claims against the state and its political subdivisions. That would include the landowners' due process and takings claims, whether or not those claims were analogous to the inverse condemnation claim.[4] Consequently, even if the presentment limitation period of the WGCA did not apply to the due process and takings claims, those claims were constitutionally deficient because they were not signed by the landowners and they were not certified to under penalty of perjury.[5]

[¶ 16] Our jurisprudence dictates that neither the district court nor this Court has subject matter jurisdiction over a governmental claim that has failed to meet the requirements of Wyo. Const. art. 16, § 7. *Lankford*, 2004 WY 143, ¶ 23, 100 P.3d at 1244; *Beaulieu II*, 2004 WY 31, ¶ 15, 86 P.3d at 868–69; *Platte Development Co. v. State, Environmental Quality Council*, 966 P.2d 972, 974 (Wyo.1998); *Sheridan Retirement Partners v. City of Sheridan*, 950 P.2d 554, 556–57 (Wyo.1997). The monetary claims should have been dismissed on that ground and we will dismiss this appeal to that extent.

2. See *Lankford v. City of Laramie*, 2004 WY 143, ¶ 18, 100 P.3d 1238, 1243 (Wyo.2004) and *Waid v. State ex rel. Dept. of Transp.*, 996 P.2d 18, 24–25 (Wyo.2000).

3. No money shall be paid out of the state treasury except upon appropriation by law and on warrant drawn by the proper officer, and no bills, claims, accounts or demands against the state, or any county or political subdivision, shall be audited, allowed or paid until a full itemized statement in writing, certified to under penalty of perjury, shall be filed with the officer or officers whose duty it may be to audit the same.

Wyo. Const. art. 16, § 7.

4. For the proposition that even constitutional claims may be reasonably restricted and regulat-

ed where there is a legitimate state interest, see *Lankford*, 2004 WY 143, ¶¶ 18–21, 100 P.3d at 1243–44; *Wyoming State Highway Dept. v. Napolitano*, 578 P.2d 1342, 1347 (Wyo.1978); *Michel v. State of Louisiana*, 350 U.S. 91, 97, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *American Land Co. v. Zeiss*, 219 U.S. 47, 66, 31 S.Ct. 200, 55 L.Ed. 82 (1911); Johnny H. Killian and George A. Costello, *The Constitution of the United States of America, Analysis and Interpretation*, 1695 (1996); 16A C.J.S., *Constitutional Law*, §§ 449, 451–52 (1984 & Cum.Supp.2004); and 16B Am. Jur.2d, *Constitutional Law*, §§ 583–88 (1998).

5. Use of the plural "claims" is somewhat misleading. The landowners presented a single "governmental claim" that became the basis for multiple causes of action.

### Declaratory Judgment

[¶ 17] In addition to the compensatory claims, the landowners' complaint also seeks redress in the form of a declaratory judgment to the effect that the Plan is invalid.[6] The landowners' contentions are summarized in their appellate brief as follows:

The [Plan] was improperly adopted by the County. The joint land use plan was not adopted in accordance with its own terms, and the County's attempt to amend and "readopt" the document violated both the plain language of the [Plan] and applicable provisions of the Wyoming Zoning Act, W.S. §§ 18-5-201 through 18-5-208. The [Plan], which is a joint land use plan created under the authority found in W.S. § 9-8-302, was also developed in violation of the WJPA and was not properly incorporated into the [county's zoning resolutions]. Extension of the [Plan's] four "study areas" was also done in violation of applicable zoning provisions.

In addition to the procedural maladies, the [Plan], or more specifically, its implementing [conditional use permit] regulations, is facially invalid. The [Plan] imposes a [conditional use permit] requirement for any "new" use in any of the four "study areas." The [conditional use permit] regulations, however, do not set forth any standards or guidelines to assist County officials in determining whether to approve or deny a [conditional use permit] application. The regulation gives unbridled discretion to County officials. Such discretion renders the [conditional use permit] regulations unconstitutionally vague and in violation of substantive due process.

The [Plan], th[r]ough its implementing [conditional use permit] regulations, is also an improper restraint on land use within Sweetwater County. At the time [the landowners] were seeking their [conditional use permits], the four "study areas" encompassed most of the unincorporated areas of the County, and almost all of the growth management area. By requiring a [conditional use permit], or a "special use" permit for any "new" land use within the "study areas," the County was effectively controlling land use in an ad hoc and arbitrary manner. Such land use control is the antithesis of proper zoning. It allows for arbitrary and discriminatory interference with the basic rights of private property.

### Adoption of the Plan

[¶ 18] The landowners' first argument is that, because the Plan as originally drawn required adoption by at least one of the cities in addition to the county, the failure of either city to adopt the Plan resulted in the county not being able to adopt it on its own. Therefore, both the initial adoption and the later amendment were invalid. The county's response to this argument, which the district court accepted, was that the county had properly adopted the Plan as amended, and that municipal concurrence was then no longer necessary. We agree. The status of the Plan in its earlier version is not relevant, given that it was adopted as amended before the landowners purchased their property. We also agree with the district court's conclusion that nothing in the record reveals the county used improper procedures in adopting the amended version. Although the Plan was styled as a "plan and agreement," the landowners have shown no reason it could not suffice as the county's land use plan, even if it did not become an agreement with the cities.

### Notice and Procedural Due Process

[¶ 19] There is some question in the materials before this Court as to the exact nature of the landowners' second argument, which involves notice and procedural due process in regard to the county's adoption of the Plan. The complaint did not allege inadequate notice or a procedural due process claim. Such an argument was made to the

---

6. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by the Wyoming constitution or by a statute, municipal ordinance, contract or franchise, may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations.

Wyo. Stat. Ann. § 1-37-103 (LexisNexis 2003).

district court, however, and in its decision letter, the district court separately dealt with the issue. Appropriately, the district court noted the existence of both statutory notice and constitutional due process requirements. *See Pfeil v. Amax Coal West, Inc.,* 908 P.2d 956, 960–61 (Wyo.1995). Without further analysis, the district court stated that the two-year period in which to contest statutory notice provisions found in Wyo. Stat. Ann. § 16–3–103(c) (LexisNexis 2001) did not apply to allegations of constitutional due process violations.[7] The district court then went on to apply the following standard, taken from *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950): "Proper notice entails notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" The district court also cited *Amoco Production Co. v. Wyoming State Bd. of Equalization,* 882 P.2d 866, 872 (Wyo.1994) (*quoting Robbins v. South Cheyenne Water and Sewage Dist.,* 792 P.2d 1380, 1385 (Wyo. 1990)), wherein this Court held that " 'procedural due process is satisfied if a person is afforded adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" [8] Applying these standards, the district court found against the landowners.

[¶ 20] In their appellate brief, the landowners have limited their notice argument to allege that the public notice issued by the county prior to adoption of the Plan as amended did not satisfy the notice and public hearing requirements of Wyo. Stat. Ann. § 18–5–202(c) (LexisNexis 2003).[9] Specifically, quoting *Hallmark Builders and Realty v. City of Gunnison,* 650 P.2d 556, 559 (Colo. 1982), the landowners contend that "a notice should set forth the information reasonably necessary to provide adequate warning to all persons whose rights may be affected by the proposed action," and that "the notice must ... apprise the public of the subject matter of the hearing and the nature of the proposed zoning change." *See also Hoke v. Moyer,* 865 P.2d 624, 630–31 (Wyo.1993) (notice and public hearing required before a board of county commissioners may adopt the recommendations of a zoning commission) and *Schoeller v. Board of County Com'rs of Park County,* 568 P.2d 869, 872 (Wyo.1977) (notice and public hearing required before zoning resolution may be adopted). Inasmuch as the landowners have limited their argument to the statutory notice requirement, we will address only that issue.

[¶ 21] The public notice published prior to adoption of the amended Plan reads as follows:

> On November 20, 1996, at 10:00 a.m., ... the Sweetwater County Planning and Zon-

---

7. "No rule is valid unless submitted, filed and adopted in substantial compliance with this section. A proceeding to contest any rule on the ground of noncompliance with the *procedural requirements of this section* must be commenced with two (2) years from the effective date of the rule." Wyo. Stat. Ann. § 16–3–103(c) (emphasis added). This provision is part of the Wyoming Administrative Procedure Act. Clearly, the landowners' complaint was brought well beyond the two-year period. Because Wyo. Stat. Ann. § 18–5–202 (LexisNexis 2003) contains its own notice and hearing requirements, however, there is some question, unanswered by the parties, whether the landowners' attack is upon the procedural requirements of Wyo. Stat. Ann. § 16–3–103(c). Without adequate guidance of the parties in that regard, and because the district court's decision was not based on that point, we will address the merits of the notice issue.

8. The parties have not directed this Court's attention to any distinction between the notice and due process requirements of a judicial proceed-

ing or contested case hearing, on the one hand, which were the situations in *Mullane* and *Amoco Production Co.,* respectively, and administrative rule-making, on the other hand, which is the situation presently before this Court. We will not venture there on our own.

9. The planning and zoning commission shall prepare recommendations to effectuate the planning and zoning purposes and certify its recommendations to the board of county commissioners. Before adopting the recommendations the board shall hold at least one (1) public hearing. Notice of the time and place of hearing shall be given by one (1) publication in a newspaper of general circulation in the county at least fourteen (14) days before the date of the hearing. After public hearing has been held, the board shall vote upon the adoption of the planning or zoning recommendation. No planning or zoning recommendation shall be adopted unless a majority of the board votes in favor thereof.

Wyo. Stat. Ann. § 18–5–202(c).

ing Commission will hold a public hearing regarding the following: Proposed changes to Sections 3, 4, and 5 of the Sweetwater County Growth Management Plan and Agreement; adoption of the Sweetwater County Growth Management Plan and Agreement by the Cities of Green River and Rock Springs; revision of City Codes and Ordinances adopted by Sweetwater County on April 23, 1996 ... and, amendment of the Sweetwater County Zoning and Subdivision Regulations to include revised City Codes and Ordinances. These proposed changes are necessary to finalize the Growth Management Plan and Agreement with the Cities of Green River and Rock Springs. The Sweetwater County Board of Commissioners will hold a public hearing on the recommendations of the Sweetwater County Planning and Zoning Commission concerning these issues at their regular meeting scheduled for December 4, 1996, at 2:00 p.m. If you have any questions regarding these proposed changes or ordinances for adoption, they are on display at the following places:....

[¶ 22] Under any applicable standard, we simply see no deficiency in this public notice. No one reading it could mistake the fact that the county would be considering proposed changes to, and adoption or re-adoption of, the county's growth management plan. Furthermore, the specific reference to Sections 3, 4, and 5 directed the reader's attention to the very provisions at issue in this case. The landowners were in no way prejudiced by

this published notice. *Pfeil,* 908 P.2d at 960 (prejudice required before agency action reversed).

### Wyoming Joint Powers Act

[¶ 23] The landowners' position that the county's adoption of the Plan violated the Wyoming Joint Powers Act (WJPA) is straightforward. They contend that the Plan is a "local land use plan" under Wyo. Stat. Ann. § 9–8–102(a)(ix) (LexisNexis 2003).[10] Local governments cooperating in the development of a local land use plan must do so in accordance with the WJPA.[11] Any cooperative agreement not complying with the WJPA is invalid.[12] Because the Plan was designated as a cooperative agreement among the county and the cities of Rock Springs and Green River, and because the Plan does not meet WJPA requirements, the landowners conclude that it is invalid.

[¶ 24] This argument, too, must fail, for the simple reason that the county and the cities did not enter into a cooperative agreement subject to the WJPA. No matter how it may have been styled, the Plan adopted and readopted by the county in 1996 was a unilateral land use plan. The fact that the county made a failed attempt to enter into a common plan with the cities did not destroy its ability to adopt the Plan on its own. Further, the fact that the City of Green River subsequently adopted the Plan and began to enforce its provisions within its municipal boundaries did not automatically convert the

---

10. "Local land use plan" means any written statement of land use policies, goals and objectives adopted by local governments. Such plans shall relate to an explanation of the methods for implementation, however, these plans shall not require any provisions for zoning. Any local land use plan may contain maps, graphs, charts, illustrations or any other form of written or visual communication[.]
Wyo. Stat. Ann. § 9–8–102(a)(ix).

11. "For the purpose of development of local land use plans, the local government within each city, town and county may cooperate in the development of land use plans not inconsistent with established goals, policies and guidelines in accordance with the powers granted by the Wyoming Joint Powers Act [§§ 16–1–102 through 16–1–110]." Wyo. Stat. Ann. § 9–8–302(b) (LexisNexis 2003).

12. Any two (2) or more agencies may enter into agreements with each other for joint or cooperative action pursuant to this act. No agreement hereunder nor amendment thereto is effective until:

(i) The governing body of each participating agency has approved the agreement or amendment;

(ii) The agreement or amendment is submitted to and approved by the Wyoming attorney general who shall determine whether the agreement or amendment is compatible with the laws and constitution of Wyoming; and

(iii) The agreement or amendment is filed with the keeper of records of each participating agency.
Wyo. Stat. Ann. § 16–1–105(a).

Plan into a joint powers agreement under the WJPA.

### Sweetwater County Zoning Resolution

[¶ 25] In *Ford v. Board of County Com'rs of Converse County*, 924 P.2d 91, 94–95 (Wyo.1996), this Court held that a county's comprehensive land use plan is merely a policy statement, while its zoning resolution has the force and effect of law. In response, the county took steps to ensure that the Plan was enforceable through its zoning resolution. *Ford* was published in September 1996. On December 4, 1996, the county amended the Plan to read, "[t]he Growth Management Plan and Agreement shall be considered an integral part of the Sweetwater County Zoning and Subdivision Regulations." The district court relied upon this amendment in concluding that the Plan could be implemented and enforced through the zoning resolution. Beyond that effort, however, the county took additional measures. On January 8, 1997, the county amended Section 3.b.(6) of its zoning resolution to read:

Within the urbanizing and city growth areas within the Growth Management Boundary as described by the Sweetwater County Growth Management Plan and Agreement and shown on Exhibit "A" of the Sweetwater County Growth [Management] Plan and Agreement, the commencement or establishment of any uses, development, or construction including the development of roadways that are established after the effective date of said agreement, shall meet the development and permitting standards and policies of the Growth Management Plan and Agreement and the Zoning Resolution of Sweetwater County. Where the policies and standards of said Growth Management Plan and Agreement are different than those standards of the Zoning Resolution or other official regulations of Sweetwater County, the more restrictive standards, regulations, or policies shall apply.

[¶ 26] While perhaps inartfully drawn, the purpose of the amendment—that being to make the conditional use permit process of the Plan part of the zoning resolution—is sufficiently clear so as to accomplish that end. That intent was made patently clear by the language of the accompanying statement of purpose:

**PURPOSE OF AMENDMENT:**

To support the integration of the Growth Management Plan and Agreement into the Sweetwater County Zoning Resolution.

This amendment helps ensure that the Growth Management Plan is properly enforced through the Zoning Resolution. A recent Wyoming Supreme Court decision has held that rules and regulations stated in a plan can only be enforced through county zoning and subdivision regulations.

[¶ 27] The landowners challenge the effectiveness of these amendments first by suggesting that they are no more than an attempt to zone through a land use plan. Second, they contend that the amendments have never taken effect because, by their own wording, they only apply to uses established "after the effective date of said agreement. . . ." Because the landowners believe that the Plan was not properly adopted, they further believe that it has never become effective and has no "effective date" for purposes of these amendments.

[¶ 28] We reject all of these contentions. We have already determined that the Plan became effective as a county land use plan when it was first adopted by the county. Further, we find the county met the dictates of *Ford* by engrafting the Plan's enforcement tool—the conditional use permit process—into the county's zoning resolution.

### Extension of the Study Areas

[¶ 29] As adopted in 1996, Section 5 of the Plan provided for four "study areas": the Design Criteria Study Area (development standards for highway rights-of-way), the Urban Reserve Study Area (agriculturally zoned areas within urbanizing areas), the Special Study Area (scenic, environmental, and recreational resources), and the Hillside Protection Study Period (development on slopes of 10% or greater). The "study period" for each area was to be three years, with the option for extension if necessary. In addition, Section 11 of the Plan created a

three-year "work program" whereby ad hoc committees would be appointed to study certain enumerated developmental issues, specifically including issues related to the four study areas.

[¶ 30] The Plan was adopted on April 23, 1996, meaning the study area and work program provisions would expire on April 23, 1999, unless extended. The county's planning and zoning commission began the process for approval of such extension by publication of a hearing notice on February 13, 1999.[13] In pertinent part, that notice indicated that an issue to be heard at the commission's March 17, 1999, meeting was the "[p]roposed extension of the study period under Section 11.0 Work Program" of the Plan. The notice also indicated that the board of county commissioners would consider the same matters during its meeting on April 7, 1999.

[¶ 31] The minutes of the March 17, 1999, commission meeting indicate that the public meeting occurred, that public comment was accepted, and that, after discussion, the commission unanimously recommended to the board that the work program be extended.

[¶ 32] On March 25, 1999, the county had published another public notice, this time announcing a "joint workshop" between the commission and the board on April 9, 1999, for the purpose of discussing general issues related to planning and zoning. The agenda available at the meeting listed the work program as one of four items for discussion. The minutes from the meeting reveal a lengthy and somewhat heated discussion of the work program, including citizen comments. In addition, the board considered the work program and took public comment in regard thereto at its regular meeting on April 7, 1999, and a continuation of that meeting on April 20, 1999. In the end, the board voted to extend the work program and study areas for an additional three years.

[¶ 33] The landowners contend that, despite all of the foregoing, notice of the possible extension of the work program was insufficient to advise the public that the study areas might also be extended. The district court rejected this contention, for two reasons. First, the district court reviewed the Plan and found the work program and the study areas to be "inextricably intertwined," meaning that notice of the former was notice of the latter. Second, the district court pointed out that some of the landowners had actually attended the April meetings for the specific purpose of opposing extension of the study areas. Thus, no prejudice could be shown to have resulted from the notices.

[¶ 34] We agree with the district court's analysis. The fact that the work program and the study areas were "linked" is revealed in one of the findings of the resolution passed by the board extending them both: "WHEREAS, a work program was established under Section 11.0 of the County's Growth Management Plan to address certain identified issues including not only the development of policies and standards for the study areas but the revision of the plan itself and the amendment of zoning and subdivision regulations[.]" This clause is an accurate recitation of the Plan's work program provisions, wherein the "topics under study" specifically include the study areas.

[¶ 35] The notice provisions of Wyo. Stat. Ann. § 18-5-202 both require only "[n]otice of the time and place of hearing." As we have previously held, however, "compliance with statutory requirements of notice and hearing does not always satisfy constitutional requirements of due process." *Pfeil*, 908 P.2d at 961. The constitutional test of proce-

13. In addition to the statutory notice requirement before a board of county commissioners adopts a land use plan, as cited in footnote 9 hereinabove, Wyo. Stat. Ann. § 18-5-202(b) contains a similar requirement for public notice before a planning and zoning commission *certifies* its recommendations to the board:

The planning and zoning commission may prepare and amend a comprehensive plan including zoning for promoting the public health, safety, morals and general welfare of the unincorporated areas of the county, and certify the plan to the board of county commissioners. Before certifying its plan or amendments thereto to the board the commission shall hold at least one (1) public hearing. *Notice of the time and place of hearing shall be given by one (1) publication in a newspaper of general circulation in the county at least thirty (30) days before the date of the hearing.*

dural due process is "reasonable notice and a meaningful opportunity to be heard. . . ." *Id.*

[¶ 36] The reasonableness of notice is determined by the circumstances, including the nature of the proceeding and the character of the rights to be affected. 16B Am.Jur.2d, *Constitutional Law* § 934 (1998). Under the Wyoming Administrative Procedure Act (WAPA), for instance, different notice requirements are provided for general rule-making activity and contested case hearings. Wyo. Stat. Ann. § 16–3–103(a)(i); Wyo. Stat. Ann. § 16–3–107(b) (LexisNexis 2003). Certainly, in the context of the present case—a public hearing set for the purpose of reviewing planning and zoning resolutions—a published notice that identified the particular issues to be discussed, even in general terms, was sufficient. Notice to the public that the work program would be addressed was sufficient notice to the public that the individual aspects of the work program, including the study areas, were at issue.

### *Conditional Use Permit Standards*

[¶ 37] The landowners argue that the county's conditional use permit process is unconstitutionally vague and violative of substantive due process because it contains inadequate standards for the guidance of permitting officials. Citing *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.,* 467 U.S. 947, 964 n. 12, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), they contend that a zoning ordinance is invalid if it leaves too much to the discretion of local officials. Rather, the landowners suggest that "standards must be precise and objective." *See Lady J. Lingerie, Inc. v. City of Jacksonville,* 176 F.3d 1358, 1362 (11th Cir.1999), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). In particular, the landowners decry what they describe as the county's "unbridled discretion" first, to either approve or deny a conditional use permit, and second, to impose any special condition or requirement the county deems "necessary."

[¶ 38] The district court granted summary judgment to the county on this issue, and we will affirm that decision. While it is true that the discretion of permitting officials may not be "unbridled," it is

also true that they must be allowed to act with a certain amount of discretion, exercised reasonably, as opposed to arbitrarily or capriciously. *Prudential Trust Co. v. City of Laramie,* 492 P.2d 971, 974 (Wyo.1972). In that regard, the county's zoning resolution contains the following guidance in limiting the conditions that may be placed on a conditional use permit:

> Pursuant to the regulations hereinafter set forth, certain uses may be permitted by Conditional Use Permit within the stated Zone Districts and may be subject to special conditions or requirements deemed necessary by the County. To insure that the Conditionally Permitted Use does not unreasonably impose adverse impacts on the health, safety, and general welfare of the County or on adjacent or nearby properties or residents, the County may impose certain special conditions including but not limited to the following:
>
> — Duration of use
>
> — Extension of the C.U.P.
>
> — Hours of operation
>
> — Site and/or building improvements
>
> — Parking requirements
>
> — Sewer and water requirements

In addition, the pre-printed application form, itself, contains a list of potential requirements: site plan, boundary survey, hazardous materials inventory, topographic map, grading and drainage plan, soil engineering tests, plans and elevations of proposed structures, structural blue prints, engineer-approved foundation designs, engineer-approved public right-of-way and road construction plans, range management plan, nutrient management plan, hillside management plan, proof of access onto a county road, proof of ownership, proof of connection to public sewer and/or water system, and "other."

[¶ 39] From these materials, we know that the guiding purpose of the conditional use permit process is the "health, safety, and general welfare" of the county. And from the statutory construction maxim, *ejusdem generis,* we also know that "other" requirements must be of the same nature as

those printed on the application form.[14] Consequently, the county is limited to the imposition of permit conditions that are designed to promote the health, safety, and welfare of its inhabitants, and that are similar in nature to those listed above. These are sufficient guidelines to prevent the county from acting arbitrarily or capriciously in the administration of the conditional use permit system.

### Illegal Restraint on Land Use

[¶ 40] The plethora of stated causes of action in the landowners' complaint caused the district court some analytical confusion. The district court interpreted the illegal restraint issue as a question of substantive due process. In their appellate brief, however, the landowners have presented illegal restraint and substantive due process as separate issues. We will do likewise.

[¶ 41] The gist of the landowners' illegal restraint argument is that the county's extensive conditional use permit system is the antithesis of zoning. In other words, instead of a conditional use permit system designed to consider land uses not specifically allowed in a particular zoning district, the county uses the special permit process to control all land uses, whether or not consistent with underlying zoning. We will not further address this issue, because the landowners have not analyzed the particulars of the county's planning and zoning resolutions within the context of this state's statutory planning and zoning construct. The landowners cite only one case, *Rockhill v. Chesterfield Tp., Burlington County*, 23 N.J. 117, 128 A.2d 473, 477–80 (1957), wherein the Supreme Court of New Jersey struck down a special use permit

system where there was no underlying zoning district scheme, in violation of that state's constitutional and statutory zoning principles.[15] This is not sufficient analysis from which we can conclude that the county's dissimilar conditional use permit structure violates Wyoming's statutes or constitution. There is simply no showing in this case that a temporary work program containing special study areas designed to deal with urbanization, superimposed on an existing zoning scheme, is an illegal restraint on land use.

### Substantive Due Process

[¶ 42] Our federal constitution, in the Fifth and Fourteenth Amendments, and our state constitution, in article 1, § 6, proclaim that "[n]o person shall be deprived of life, liberty or property without due process of law." The constitutional principle of "due process" has both a procedural aspect and a substantive aspect. *Moreno v. State, Dept. of Revenue and Taxation*, 775 P.2d 497, 500 (Wyo.1989). We have already considered herein the notice and opportunity to be heard requirements of procedural due process. In a previous discussion of the exercise of the police power by local governments, we said the following:

> "In general, Wyoming has, in zoning cases, interpreted its due process provision in a manner parallel to the federal provisions." *See e.g. Board of County Commissioners of Teton County v. Teton County Youth Services, Inc.*, Wyo., 652 P.2d 400, 414 (1982).

> . . .

> The constitutional standard of substantive due process, under both United

14. The rules of statutory construction apply to the construction of administrative rules and regulations. *Powder River Coal Co. v. Wyoming State Bd. of Equalization*, 2002 WY 5, ¶ 6, 38 P.3d 423, 426 (Wyo.2002). *"Ejusdem generis"* is a "canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed." *Black's Law Dictionary* 556 (8th ed.2004). *See* Norman J. Singer, 2A *Statutes and Statutory Construction* § 47:17 (6th ed.2000) (also "called Lord Tenterden's Rule, [it] is of ancient vintage, going back to Archbishop of Canterbury's Case, 2 Co Rep 46a, 76 Eng Repr

519 (1596)"). This Court has applied the doctrine many times. *See Powder River Coal Co.*, 2002 WY 5, ¶ 19, 38 P.3d at 429–30 and the cases cited therein.

15. The New Jersey court described the offending program as "spot zoning." *Rockhill*, 128 A.2d at 478. Technically, "spot zoning" occurs when "a particular piece of land [is zoned] without regard for the zoning of the larger area surrounding the land." *Black's Law* Dictionary, *supra*, at 1650. "Spot zoning" does not really describe what was happening in New Jersey nor does it describe the Sweetwater County plan.

States and Wyoming interpretations, demands that a police power regulation must promote a legitimate public objective with reasonable means. The substantive due process standard of reasonableness is applicable during the initial legislative process and theoretically confines the legislators. The judiciary may, in the context of an actual case, be called on to measure the legislative performance against the constitutional standard. When the legislative enactment lies in the economic and social welfare area, and when there are no suspect criteria or fundamental interests involved, the court will, in testing the enactment, inquire only as to whether the regulation is of debatable reasonableness. In other words, if the court perceives that the legislature had some arguable basis for choosing the end and the means, it will sustain the regulation at least as to compliance with substantive due process. Only when a regulation amounts to an arbitrary deprivation of regulatees' property will it be deemed to violate the dictates of substantive due process. As we said in *Washakie County School District No. One v. Herschler*, Wyo., 606 P.2d 310, 333 (1980), cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28:

'When an ordinary [nonfundamental constitutional] interest is involved, then a court merely examines to determine whether there is a rational relationship between a classification * * * and a legitimate state objective.'

. . .

The legitimate objectives of the police power are loosely characterized as being public in nature and the potential range is very broad. See *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954)....

As to the means chosen by the Cheyenne council to achieve these objectives, we reiterate that, in the economic and social welfare area and when the ordinance is examined in a general, facial manner, the courts will usually go no further than to ascertain the debatable reasonableness

of the legislative choices. See *Snake River Venture v. Board of County Commissioners, Teton County*, Wyo., 616 P.2d 744, 753 (1980). The United States Supreme Court, in dealing with general, facial challenges to local exercises of police power, has sustained the substantive due process reasonableness of a number of facets of local zoning....

. . .

Substantive due process, with its emphasis on legitimate objectives and rational means, can be explored and applied in a general sense when the reasonableness of the entire ordinance or statute is in question. See e.g. *Village of Euclid, Ohio v. Ambler Realty Co.*, [272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926)]. It can also be examined in a specific sense, when the court evaluates the reasonableness of a law as applied to an individual. See *Nectow v. City of Cambridge*, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928)."

*Board of County Com'rs of Teton County v. Crow*, 2003 WY 40, ¶ 19, 65 P.3d 720, 727–28 (Wyo.2003) (*quoting Cheyenne Airport Bd. v. Rogers*, 707 P.2d 717, 726–28 (Wyo.1985)). See also *Michael v. Hertzler*, 900 P.2d 1144, 1148 (Wyo.1995) (substantive due process protects against arbitrary governmental action); *White v. State*, 784 P.2d 1313, 1315 (Wyo.1989) (substantive due process met if the statute is rationally related to a legitimate state objective); *Moreno*, 775 P.2d at 500 ("the exercise of the state police power must promote a legitimate public objective with reasonable means"); *Bulova Watch Co. v. Zale Jewelry Co. of Cheyenne*, 371 P.2d 409, 417 (Wyo.1962) ("the purposes for which the police power is invoked must have relation to the public weal, must be within the scope and in furtherance of that power, and the means adopted must be reasonable and appropriate for the accomplishment of and have a substantial connection with the end in view") and *Pirie v. Kamps*, 68 Wyo. 83, 229 P.2d 927, 929 (1951) (laws enacted for the general welfare must be reasonable and not arbitrary). The party alleging an infringement of his constitutional rights bears the burden of showing the existence of the right, and that it has been infringed upon in an

impermissible way. *Meyer v. Norman,* 780 P.2d 283, 289 (Wyo.1989).

[¶ 43] The landowners contend that the county's conditional use permit system is facially unconstitutional because it is vague, and it is unconstitutional as applied to them because it was applied arbitrarily. As to the first contention, the landowners argue, as set forth above, that the permit system contains no standards or guidance for county enforcement officials. Having already dealt with that contention, we will not do so again. Suffice it to say that we do not find unbridled discretion in the Plan or in the enforcing zoning resolution; rather, we find sufficient guidance within both for enforcement officials and for those subject to regulation.

[¶ 44] The landowners' as-applied challenge to the conditional use permit system is based upon several factual allegations: (1) the county unreasonably required the landowners to attend a pre-application meeting, to vacate an old subdivision plat, to dedicate a public road, to prepare a certified range management plan, and to reach an agreement with surrounding landowners; (2) the county unreasonably delayed the permitting process; and (3) the county's actions were motivated by bias, bad faith, or other improper motives, including community resistance.

[¶ 45] In their appellate brief, the landowners detail their grievances. They contend that the county acted arbitrarily in requiring them to attend a pre-application meeting. They find arbitrariness in this requirement because such is not contained in the conditional use permit regulations, but is required on a case-by-case basis as a policy of the county's planning office. Second, the appellants contend that there is no statute directing them to vacate the subdivision plan, so the county's demand that they do so was arbitrary. Next, the landowners describe as "the most egregious example of the vague nature of" the conditional use permit regulations as being the requirement that they obtain environmental studies. More precise-

ly, they complain that it was uncertain whether the requirement for such studies was truly mandatory, or was merely a recommendation.[16]

[¶ 46] The district court applied the review standard set forth above and concluded that the permit system did not violate the landowners' right to substantive due process. First, the district court noted that land-use regulations, including zoning laws, that reasonably promote the health, safety, and general welfare of the populace, even when adversely affecting real property interests, have been viewed as permissible governmental action. *See Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 125, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). Finding that both the Plan and the county's zoning resolution were implemented for the public health and welfare, the district court concluded that the means chosen to achieve those objectives were reasonable.

[¶ 47] Having reviewed the entire record, we conclude that the district court was correct in granting summary judgment to the county on the landowners' substantive due process issues. Aside from diatribe, the landowners have provided little to show either that the county's reasons for exercising the police power, or its chosen methods in doing so, were improper. In the urbanizing area, the county had implemented a conditional use permit system to manage growth while it studied its existing zoning districts. The landowners purchased agriculturally zoned lands, subject to an existing subdivision plat, that they intended to convert to "hobby ranching." These facts alone subjected the landowners to the county's reasonable change-in-use policies. In addition, the lands were affected by at least two of the study areas found in the Plan—Hillside Protection and Urban Reserve—that justified additional regulatory processes. And beyond that, public hearings revealed opposition from a neighboring subdivision, consideration

16. While the landowners do not specifically identify the environmental studies to which they object, they do direct this Court's attention to a letter from the county's land use director, in which he discusses a certified nutrient management plan, a certified range management plan,

an air quality study, a drainage report, a site plan, a transportation plan, and a water use plan. We note that these are included as requirements on the conditional use permit application.

of which is, of course, the reason for public hearings.

[¶ 48] The lack of substance in the landowners' substantive due process argument on appeal is, perhaps, best exemplified by their presentation in regard to the subdivision plat issue. In their appellate brief, the appellants make the following complaints:

The [conditional use permit] condition requiring [the landowners], as opposed to the County, to vacate the subdivision is another example of the problems associated with the vague [conditional use permit] standards. Despite the fact that [the landowners] were never involved in recording the subdivision plat, and that there is no statutory directive requiring [the landowners] to vacate the plat, the County placed this responsibility on [the landowners].... Requiring [the landowners] to vacate a subdivision without the associated statutory authority is just the sort of unbridled discretion that violates the substantive Due Process standards and that renders the [conditional use permit] regulations invalid.

. . .

Additionally, the substantive and procedural road blocks erected by the Commission and the Board constitute an unreasonable delay in the permitting process. The first delay occurred in the fall of 1998 when the County required [the landowners] to vacate the platted subdivision. There is nothing in any Wyoming statute which would require the landowner not responsible for the subdivision, as opposed to the County, to vacate the subdivision. The County arbitrarily made the vacation the responsibility of [the landowners] rather than the County, and delayed processing the [conditional use permit] applications until the plat was vacated.

[¶ 49] These complaints are unaccompanied by citation to pertinent authority, or even by explanation as to why such a requirement is arbitrary and unreasonable. The district court made the following findings, unchallenged in this appeal, in regard to the subdivision plat issue:

In October 1998, the County notified [the landowners] that a significant portion of the property lay within the existing Overland Village Subdivision and that [the landowners] needed to obtain a [conditional use permit] to establish any new uses on the property. On October 18, 1998, the County sent [the landowners] correspondence that described the required process to pursue issuance of a [conditional use permit] from the Board.

. . .

During this entire period of time, the County required resolution of the Overland Village Subdivision issues and related access issues. Essentially, the access issues included the "Gaensslen Ranch Road" and related "spur" that provides access to the Gaensslen Ranch Subdivision and to [the landowners'] property. [The landowners] maintained that the Gaensslen Ranch Road was not a public roadway. The County maintained that, before the Overland Village Subdivision could be vacated, it was necessary for [the landowners] either to dedicate the Gaensslen Ranch Road to the County or to comply with their obligations to construct the "Firehole Basin Drive," which was the road that had been dedicated to the County as part of the Overland Village Subdivision plats. [The landowners] challenged the public nature of the Gaensslen Ranch Road, and the County asserted that, in the alternative, [the landowners] would be required to construct the Firehole Basin Drive in order to prevent any violation of Wyo. Stat. Ann. § 34–12–108.

(Footnotes omitted.)

[¶ 50] It almost goes without saying that the county had a legitimate interest both in requiring amendment of the subdivision plat in the face of a proposed contrary use, and in maintaining public access to the surrounding properties. Furthermore, Wyo. Stat. Ann. §§ 34–12–106 through 34–12–111 (LexisNexis 2003) clearly reveal the landowners' role in the vacation of a subdivision plat. Indeed, the landowners have presented no authority for the proposition that it would be the county's duty or right to vacate the subdivision plat. And finally, vacation of the plat necessarily was complicated by the effect of vacation upon dedicated public streets and roads. *See Ahearn v. Town of Wheatland*, 2002 WY

12, ¶¶ 22–23, 39 P.3d 409, 418–19 (Wyo.2002); *Town of Moorcroft v. Lang,* 779 P.2d 1180, 1184 (Wyo.1989) and *Gay Johnson's Wyo. Automotive Service Co. v. City of Cheyenne,* 367 P.2d 787, 789 (Wyo.1961). It could be said that, not only was the county's requirement that the subdivision plat and public access issues be resolved not arbitrary, but a failure to require resolution of those issues would have been unreasonable under the circumstances.

[¶ 51] The landowners' contention that the county acted in bad faith or from improper motive is similarly deficient. First, the landowners contend that the county paid inordinate attention to the concerns of property owners in a neighboring "upscale residential subdivision. . . ." They cite *Woodwind Estates, Ltd. v. Gretkowski,* 205 F.3d 118, 124–25 (3rd Cir.2000), for the proposition that delay in the permitting process due to community resistance raises the question of bad faith or improper motive, and they cite *Fritts v. City of Ashland,* 348 S.W.2d 712, 714 (Ky.1961), as holding that the purpose of zoning is not to protect the value of the property of particular individuals. Further, the landowners suggest that the county's actions in regard to their conditional use permit applications was likely unduly influenced by the fact that, among the neighboring subdivision owners who objected to and presented evidence against the permits, were a prominent local attorney and a member of the county's planning and zoning commission.

[¶ 52] We are convinced, for several reasons, that summary judgment in favor of the county was appropriate despite these bad faith allegations. The general purpose of zoning is to "conserve and promote the public health, safety and welfare of the citizens of the county." Wyo. Stat. Ann. § 18–5–105(a) (LexisNexis 2003); *see also* Wyo. Stat. Ann. § 18–5–306(a)(vii) (LexisNexis 2003). Surely, the best evidence of the effect of particular action upon the citizenry is input from those citizens affected thereby. Furthermore, protection of property values and preservation of neighborhood "character" are proper factors for consideration in zoning decisions. 83 Am.Jur.2d, *Zoning and Planning* §§ 60–61 (2003). Even the cases cited

by the landowners recognize these principles. In *Woodwind Estates, Ltd.,* 205 F.3d at 123–25, the municipality's denial of a permit was reversed because it was based on a factor irrelevant to the purposes of zoning, that being the socioeconomic status of prospective tenants in a low-income housing project, not simply because the municipality had considered community resistance to the project. Similarly, in *Fritts,* 348 S.W.2d at 714, while stating that it is not the purpose of zoning to protect property values, the court added that "the effect of a zoning change on the value of neighboring property is . . . one factor to be considered[.]" And beyond all that, the "improper· motive" standard of *Woodwind Estates, Ltd.* has been abrogated, and has been supplanted with a standard whereby the substantive component of the due process clause is violated by governmental action only where such action is so arbitrary as to shock the conscience. *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA,* 316 F.3d 392, 399–402 (3rd Cir.2003).

[¶ 53] Finally, the landowners provide only innuendo in regard to the participation of a local attorney and a planning commission member in the opposition to their conditional use permit applications. The district court found, and the landowners have not suggested otherwise, that the commission member recused herself from the commission proceedings and did not vote on the issue. *See* 83 Am.Jur.2d, *Zoning and Planning, supra,* § 734 (recusal is proper remedy for potential conflict of interest). Likewise, the landowners recite no facts showing improper participation by the attorney. In the absence of such showing, we will presume neither bad faith nor prejudice, and we have been directed to no evidence showing county conduct that "shocks the conscience."

## CONCLUSION

[¶ 54] The landowners' monetary claims should have been dismissed for failure to comply either with the requirements of the WGCA or Wyo. Const. art. 16, § 7. In affirming the summary judgment granted to the county in the declaratory judgment sphere, we have found (1) that the Plan was properly adopted by the county as its individual land-

use plan and not as a joint land use-plan with Rock Springs or Green River; (2) that the Plan did not need to meet the requirements of the WJPA; (3) that the landowners' right to procedural due process was not violated in the adoption process; (4) that the Plan was properly enforced through the county's zoning resolution; (5) that the time period for the study areas contained in the Plan was properly extended; (6) that the Plan's conditional use permit standards are not unconstitutionally vague; (7) that the Plan and its conditional use permit system does not constitute an illegal restraint on land use; and (8) that the landowners' right to substantive due process was not violated by application of the conditional use permit system.

[¶ 55]   The appeal of the monetary claims is dismissed.   Summary judgment in favor of the county is affirmed as to the declaratory judgment issues.