**WYOMING CONSUMER GROUP,
a not for profit corporation,
Appellant (Petitioner),**

v.

**PUBLIC SERVICE COMMISSION OF WYOMING; and Natural Gas Processing, Appellees (Respondents).**

No. 93–178.

Supreme Court of Wyoming.

Oct. 5, 1994.

Daniel T. Davis, Worland, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., and Kristin H. Lee, Asst. Atty. Gen., for appellee Public Service Com'n.

* Retired July 6, 1994.

Thomas A. Nicholas of Hirst & Applegate, Cheyenne, for appellee Natural Gas Processing.

Before THOMAS, CARDINE,* GOLDEN, and TAYLOR, JJ., and BROWN, J. Ret.

CARDINE, Justice, Retired.

Wyoming Consumer Group (the Group) appeals from a Public Service Commission (PSC) decision granting the application of Wyoming Gas Company (WyoGas) to pass on a net wholesale gas cost decrease of $0.0106 per delivered MCF.

We affirm.

The Group raises two issues:

1. Is the "pass-on" gas price at Little Grass Creek, the Basin Gathering System, Manderson Field, and Desert Springs Field, as of November 1, 1991, excessive and in violation of law, and if it is, did the Public Service Commission err in not reducing the utility's rates[?]

2. Has Wyoming Gas Company violated its duty to provide reasonable rates by failing to fully and effectively convert from high cost gas purchased from Williston Basin Interstate Pipeline Company (WBI), and if it has, should the Public Service Commission reduce the utility's rates to a point reflecting substantial compliance?

Appellee Natural Gas Processing (NGP) rephrases the issues somewhat:

A. Is the scope of review sought by the Wyoming Consumer Group permitted under the Wyoming Rules of Appellate Procedure, the Wyoming Administrative Procedures Act or Wyoming Case Law[?]

B. Are the Public Service Commission's findings of fact relating to the reasonableness of Wyoming Gas Company's purchases of natural gas supply and reasonableness of Wyoming Gas Company's rates supported by substantial evidence[?]

C. Are the Public Service Commission's findings of fact relating to Wyoming Gas Company's conversion off Williston Basin Interstate Pipeline supported by substantial evidence[?]

## FACTS

In 1983, NGP, a natural gas supplier, purchased a controlling interest in WyoGas, a utility, which supplies gas to the communities of Basin, Byron, Greybull, Manderson, Thermopolis, and Worland. In 1988, WyoGas was merged into NGP. The utility continues to operate under the WyoGas name.

Currently, WyoGas purchases gas from NGP at the Desert Springs Field, the Little Grass Creek Unit, the Basin Gathering System and the Manderson Field. NGP supplies about 73 percent of WyoGas' requirements with the remaining 27 percent being provided by Williston Basin Interstate Pipeline Company (Williston Basin).

In October of 1991, WyoGas filed an application with the PSC to adjust its commodity balancing account and pass on a net wholesale gas savings of $0.0106 per delivered MCF to its customers with an effective date of November 1, 1991.

On November 21, 1991, the Group filed a petition with the PSC alleging that WyoGas was overpaying for its gas. The basis of the Group's complaint was the contracts that WyoGas had entered into with NGP and Williston Basin. The Group alleged that NGP was using its position as owner of WyoGas to sell its gas above the market price. The Group also alleged that NGP had failed to fully take advantage of a conversion program which would have reduced WyoGas' dependency on high priced gas purchased from Williston Basin.

The PSC held public hearings on WyoGas' application and, on September 4, 1992, it issued its Memorandum Opinion, Findings and Order. The PSC concluded that NGP sold gas to WyoGas at a fair market value; that WyoGas had made reasonable efforts to find alternative lower cost, long-term, firm gas supplies; and that WyoGas has used reasonable efforts in its actions regarding conversion.

The Group appealed this decision to the district court, which affirmed the PSC's decision in its entirety. The Group now appeals to this court.

## STANDARD OF REVIEW

Our review of PSC decisions is well established and straight forward. We begin by noting that the scope of our review is determined by W.S. 16–3–114(c) (1990), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

See *Mountain Fuel Supply Co. v. Public Serv. Comm'n,* 662 P.2d 878, 881–82 (Wyo. 1983). In this appeal the Group is essentially arguing that the evidence supported its position rather than the position of the PSC. Therefore, W.S. 16–3–114(c)(ii)(E) is applicable, and we must determine if the PSC's decision is supported by substantial evidence.

Substantial evidence is:

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Such evidence may be less than the weight of the evidence, but cannot be clearly contrary to the overwhelming

weight of the evidence. It is more than a mere scintilla of evidence or suspicion of a fact to be established.

*Montana Dakota Utilities Co. v. Public Serv. Comm'n,* 847 P.2d 978, 983 (Wyo.1993) (quoting *Mountain Fuel,* at 882) (citations omitted). The Group bears the burden of proving a lack of substantial evidence. *Montana Dakota,* at 983. Furthermore,

> [i]f there is present substantial evidence to support a finding of the agency, the ultimate weight to be given that evidence before the PSC, as the trier of fact, is to be determined by the PSC in light of its expertise and the experience of its members in such matters.

*Mountain Fuel,* at 883.

## DISCUSSION

We begin by summarizing the pertinent terms of the four contracts which WyoGas has entered into with NGP:

### Little Grass Creek Contract

This contract was entered into June 1, 1980, with NGP and is to last as long as commercial production continues in the unit. Gas under the contract costs $2.00 per MMBTU plus a $0.335 delivery charge for a total cost to WyoGas of $2.335 per MMBTU. The contract calls for price redetermination every two years. There is no minimum take required but WyoGas is required to use its best efforts to buy gas off of the contract. Little Grass Creek supplies the town of Thermopolis.

### Basin Gathering System Contract

The contract was entered with NGP on January 1, 1985. It provides for a twenty-year term with an evergreen clause.[1] The delivered cost of the gas is $2.721 per MMBTU and price redetermination is every two years. There is no minimum take requirement but there is a best efforts clause. This contract supplies the needs of the town of Basin.

### Manderson Field Contract

This contract was entered into on November 1, 1990, with NGP. It is a twenty year contract with an evergreen clause. The gas from Manderson Field costs $2.00 per MMBTU plus a $0.667 per MMBTU delivery cost which equals a total cost of $2.667 per MMBTU. This contract also has a best efforts clause and no minimum take requirement. The gas from Manderson supplies the towns of Greybull, Byron, Worland, and Manderson.

### Desert Springs Field Contract

This contract with NGP is dated February 1, 1989. It too is for twenty years with an evergreen clause and no minimum take is required though it contains a best efforts clause. Gas from Desert Springs costs $2.971 per MMBTU with $0.971 of that delivery costs. Desert Springs supplies Worland.

■ The Group asserts that the price of gas charged to WyoGas under each of these contracts is above the fair market price. As support for its argument, the Group points to the deposition testimony of several other gas suppliers who operate in the same region as NGP. The Group contends that this deposition testimony shows that there are other gas suppliers willing to sell gas for substantially less than what WyoGas is currently paying.

The Group fails to distinguish between long-term and short-term contracts. We agree with the Group that there is cheaper gas available on the spot market; the record clearly shows that to be the case. However, all of WyoGas' contracts are long-term in nature. The testimony showed that WyoGas wanted longer term contracts in order to ensure proven reliability, reserves, field operation reliability, quantitative deliverability and financial reliability. WyoGas felt that its position as a small utility required this strategy. Consequently, WyoGas was willing to pay more for their gas because it gave them an assured supply.

The only evidence in the record on the fair market value of similar long-term contracts supports the PSC's decision. NGP sells gas to other entities on the open market at prices in excess of what WyoGas pays. The prices

---

1. An evergreen clause provides for the continuation of the contract after the primary term on a month-to-month basis unless canceled by one of the parties on thirty days written notice.

stated in depositions and relied upon by the Group relate to spot market or short-term contracts. Many of the deponents, however, testified either that they had no gas available for sale or that they were unwilling to enter long-term contracts under the terms WyoGas did with NGP.

The PSC concluded that long-term reliable gas supplies are essential in order to ensure an adequate supply and to meet peak requirements. We conclude that the PSC's decision that a reasonable price is paid by WyoGas for NGP gas is supported by substantial evidence.

■ The Group raises a host of other issues such as lack of consideration, unconscionability, failure to file with the PSC and contracting between related entities. These issues were not raised below, and we will not consider them.

■ The Group also challenges the contract between WyoGas and Williston Basin. The gas purchased under this contract is used by WyoGas to supply the peak needs of its customers. The majority of the gas, as a result, is purchased in the winter months. The gas from Williston Basin costs $5.205 per MMBTU. Williston Basin has implemented a conversion program whereby a customer such as WyoGas can convert a percentage of its required firm volume purchase to transportation rights on Williston Basin's interstate pipeline. The Group alleges that WyoGas has not taken full advantage of the benefits of the conversion program and, consequently, the gas purchased from Williston Basin costs more than it should.

The conversion program allowed a customer to convert as follows: 15 percent of volume on January 1, 1989; 15 percent on November 1, 1989; 20 percent on November 1, 1990; and 25 percent on each November 1, 1991 and 1992. If the customer notified Williston Basin by June 30, 1991, an additional five years was available to convert any remaining volumes. WyoGas had converted 50 percent of its Annual Entitlement Quantity— the total amount of gas Williston Basin would sell or transport to WyoGas in one year—and

14 percent of its Maximum Daily Quantity— the maximum amount of gas Williston Basin would sell or transport in a single day to WyoGas.

WyoGas argued that it had not converted the full percentages it was entitled to because it wanted to protect its gas supply for peak periods since it could not find suitable replacement sources for the higher priced Williston Basin gas. The PSC concluded that WyoGas' actions regarding its conversions were reasonable in light of the difficulty in finding lower cost reliable gas supplies.[2]

The Group appears to ignore the consequences of full conversion. In order to fully convert, WyoGas must find alternative gas supplies; the record is clear that WyoGas could not find any supplies which were as reliable as the Williston Basin gas. Importantly, this gas supply was used by WyoGas to meet the peak needs of its customers during the winter. Given the potentially harsh winters in this state, a reliable supply of gas for the heating needs of customers is vital. We hold that there is substantial evidence to support the PSC's finding that WyoGas acted reasonably in utilizing the conversion program.

### CONCLUSION

There is substantial evidence in the record to support the PSC's decision that WyoGas is paying a reasonable price for its gas from NGP and that WyoGas has reasonably implemented the Williston Basin conversion program.

Affirmed.

---

2. The PSC also found that the conversion issue may be moot because of the Federal Energy Regulatory Commission's Order 636. *See* 57 Fed.Reg. 13267 (1992).