2011 WY 17

**WYOMING DEPARTMENT OF TRANSPORTATION,**
Appellant (Respondent),

v.

**Steven POTVIN, Appellee (Petitioner).**

No. S–10–0125.

Supreme Court of Wyoming.

Feb. 4, 2011.

**56**

Representing Appellant: Bruce A. Salzburg, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; Michael T. Kahler, Assistant Attorney General; and Jackson M. Engels, Assistant Attorney General.

Representing Appellee: Gerard R. Bosch and Mark J. Longfield, Law Offices of Jerry Bosch, LLC, Wilson, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1] The Appellant, Wyoming Department of Transportation (WYDOT), challenges a district court order which reversed an order of an independent hearing examiner (hearing examiner) to the effect that Appellee, Steven Potvin (Potvin), was required to surrender his driver's license because of the effect of the implied consent suspension statute. That statute provides for the suspension of a driver's license based upon a person's refusal to submit to a chemical test for the purpose of ascertaining if that person's blood alcohol/controlled substance content exceeds the statutory limit. The request for such a test is usually made when a person is arrested, and the arresting officer has probable cause to believe that the arrested person was either driving, or in actual physical control, of a motor vehicle while under the influence of alcohol or a controlled substance. Wyo. Stat. Ann. § 31–5–233(b) (LexisNexis 2009). If a person refuses the request to be subjected to a chemical test, then that individual's driver's license can be suspended on the basis of that refusal. Wyo. Stat. Ann. § 31–6–102(a), (d) and (f) (LexisNexis 2009). Potvin's driver's license was suspended under that statute. The suspension of his license was stayed in accordance with Wyo. Stat. Ann. §§ 31–6–103 and 31–7–105(b)(i) (LexisNexis 2009) when he requested a hearing on the implied consent suspension. At the close of Potvin's hearing, the hearing examiner was required to order that the suspension be either rescinded or sustained. In this instance, the hearing examiner sustained the suspension of Potvin's driver's license.

[¶ 2] Potvin filed a petition for review in the district court in accordance with W.R.A.P 12. The district court reversed the hearing examiner's decision on the basis that WYDOT failed to present substantial evidence at the hearing into this matter so as to establish that the police officers had probable cause to believe that Potvin had been driving, or was in actual physical control, of a motor vehicle upon a public street or highway while under the influence of alcohol. We will reverse the district court's order and reinstate that of the hearing examiner.

### ISSUES

[¶ 3] WYDOT raises this issue:

Was there substantial evidence to support the hearing examiner's finding that Officer Horsely had probable cause to arrest [Potvin] for driving while under the influence of alcohol?

Potvin posits these issues:

I. The [hearing examiner's] finding that a reasonable articulable suspicion existed is not supported by substantial evidence that is admissible, reliable or trustworthy.

II. The [hearing examiner's] finding that probable cause existed is not supported by substantial evidence that is admissible, reliable, or trustworthy.

III. The [hearing examiner's] unsubstantiated selection of evidence is arbitrary and capricious.

WYDOT identifies two additional issues based on the content of Potvin's brief:

I. Is there substantial evidence to support the hearing examiner's finding that reasonable suspicion existed to contact [Potvin] based on a hit and run investigation?

II. Did the [hearing examiner] properly rely on the certified record submitted by [WYDOT] in upholding the suspension of [Potvin's] driver's license?

## STANDARD OF REVIEW

[¶ 4] We apply the standard of review we articulated in *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶¶ 8, 22–24, 26, 188 P.3d 554, 557, 561–62 (Wyo.2008):

> When we consider an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision. Instead, " 'we review the case as if it had come directly to us from the administrative agency.' " (Citations omitted.)
>
> . . . .
>
> ... [I]n the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling. When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. See, *Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.,* 882 P.2d 858, 860–61 (Wyo.1994); [*Board of Trustees v.*] *Spiegel,* 549 P.2d [1161] at 1178 [(Wyo.1976)] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

> The arbitrary and capricious standard remains a " 'safety net' to catch agency action which prejudices a party's substantial rights or which may be contrary to the other W.A.P.A. review standards yet is not easily categorized or fit to any one particular standard." *Newman* [*v. State ex rel. Wyoming Workers' Safety and Compensation Div.*], ¶ 23, 49 P.3d [163] at 172 [(Wyo. 2002)]. Although we explained the "safety net" application of the arbitrary and capricious standard in *Newman,* we will refine it slightly here to more carefully delineate that it is not meant to apply to true evidentiary questions. Instead, the arbitrary and capricious standard will apply if the hearing examiner refused to admit testimony or documentary exhibits that were clearly admissible or failed to provide appropriate findings of fact or conclusions of law. This listing is demonstrative and not intended as an inclusive catalog of all possible circumstances. *Id.*

> There will be times when the arbitrary and capricious standard appears to overlap with some of the other standards. For example, a decision against the great weight of the evidence might properly be called arbitrary or capricious in everyday language. However, the words "arbitrary" and "capricious" must be understood in context as terms of art under the administrative review statute and should not be employed in areas where the more specifically defined standards provide sufficient relief.

> . . . .

> As always, we review an agency's conclusions of law de novo, and " '[w]e will affirm an agency's legal conclusion only if it is in accordance with the law.' " *Diamond B Servs., Inc. v. Rohde,* 2005 WY 130, ¶ 12, 120 P.3d 1031, 1038 (Wyo.2005), quoting *DC Prod. Serv. v. Wyo. Dep't of*

*Empl.,* 2002 WY 142, ¶ 7, 54 P.3d 768, 771 (Wyo.2002).

Also see, *In re Hittner,* 2008 WY 91, ¶ 11, 189 P.3d 872, 876 (Wyo.2008).

### Findings and conclusions of hearing examiner

[¶ 5] WYDOT's presentation of evidence consisted of the submission of 23 pages of documentation from the files of the Jackson Police Department. Two police officers were involved in the investigation, as well as the eventual questioning and arrest of Potvin. That documentation explains the events leading up to the arrest of Potvin and the police officers' request that he submit to chemical testing. Wyoming statutes and our case law recognize that this is an accepted practice, although we have criticized it tangentially. Wyo. Stat. Ann. § 31–6–102(g); see *Hittner,* 189 P.3d at 875 n. 3.

[¶ 6] Potvin's evidence consisted of the transcript from the administrative hearing. At that hearing, Potvin admitted that on the date in question, he drank only "most" of a single beer before driving and denied that he had made any admissions to the contrary to the police officers. He admitted that he slid off the road at the scene of an accident that is central to this case. The hearing examiner found Potvin's testimony, and the very limited testimony of his roommate, to be not credible.

[¶ 7] The events at issue in this case took place in "the evening hours" of January 11, 2008. The police officers could have been more diligent in recording the timeline of the evening, especially the times of the significant events included in the narrative of the investigation. The report indicates that they were dispatched to the scene of an incident wherein a truck slid off the road and hit a fence. The record reflects that the dispatch was received by the investigating officers at 8:48 p.m., but the times the accident occurred, or was reported to dispatch, are not in the record. From this point forward, the police narrative does not include any additional times except that Potvin was arrested at 10:50 p.m.

[¶ 8] The vehicle involved in the accident was described in the initial report as a black truck. The police located the scene of the reported incident and found evidence that a vehicle had gone off the road and that a stop sign was found "on the other side of the fence" at that scene. The police also found a small piece of black plastic in the snow at the scene. The police surmised that it came from the vehicle which had been involved in the accident. The report further indicated that the officers drove around the neighborhood looking for a vehicle with front end damage, but did not find one.

[¶ 9] "About 45 minutes later" (no precise time given), police dispatch received another report on the incident. This report described the vehicle involved as a "black F–250 type vehicle (Ford) with a snowmobile in the back." The police officers continued their search for such a vehicle and found a black Dodge pickup with a snowmobile on a trailer attached to it. That pickup was parked in a somewhat irregular manner, suggesting impaired driving ability. The front end of that vehicle had a piece of plastic broken off its license plate bracket, and the piece of plastic found at the scene fit the missing piece. However, the piece of plastic was not included in the record on appeal. The Dodge pickup had snow packed in the grill and front wheels.

[¶ 10] The police officers knocked on the door of the house where the pickup was found, and after "several minutes," they heard a noise that "sounded like someone falling out of bed or on the floor." Potvin then answered the door. The police asked if he owned the pickup outside the residence, and Potvin denied it. The police indicated that they knew he was lying, and Potvin then admitted it was his. The police requested permission to come inside, and Potvin allowed them to do so. Under questioning from the police, Potvin admitted that he had the accident in question. He also admitted that he drank seven drinks that night before driving home. In addition, Potvin said that he had no alcoholic beverages to drink since he had been home.

[¶ 11] Based upon these admissions, the police determined that Potvin could be a DUI. He was given field sobriety testing, which he failed. His eyes were bloodshot

and glassy. His speech was slow and slurred. He had trouble keeping his balance and answering simple questions. Potvin admitted that he drank three beers and three whiskeys at a restaurant before driving home. Potvin smelled of alcoholic beverages.

[¶ 12] When Potvin testified in his own behalf, he stated that on the day in question, he was snowmobiling from 10:00 a.m. until "dark." He then went to a restaurant to have something to eat and drink. He had not been drinking during the day and had only "most" of one beer while eating at the restaurant. He conceded that he slid off the road at the location which was called in as an accident by anonymous callers. He said he then went home and did all the rest of his drinking after he arrived home, shortly after 8:30 p.m. Potvin's roommate corroborated that part of the story that occurred after 8:30 p.m., as well as other portions, of Potvin's testimony.

[¶ 13] At 10:50 p.m., Potvin was arrested for drunk driving. The police officer's report indicated that he had "recorded the audio of the [field sobriety] tests" and that he had "burned a copy for evidence and a copy for the County Attorney." That audio tape does not appear in the record on appeal. Potvin was requested to submit to chemical testing and he refused.

[¶ 14] The hearing examiner concluded that Potvin and his roommate were not credible witnesses, and that the police department records contained credible documentation supporting Potvin's arrest and the request for him to submit to a chemical test.

**The district court's order reversing the hearing examiner**

[¶ 15] We need not set out the district court's findings because they are just as comprehensive as those made by the hearing examiner. However, the district court concluded that there was not substantial evidence that Potvin had been driving or had been in actual control of a motor vehicle upon a street while under the influence of alcohol. This was largely premised on the testimony given by Potvin, when sober and under oath, as opposed to the statements made to police officers while he was very intoxicated and awakened from sleep hours after the reported accident occurred.

[¶ 16] We take note here that 1 Weil's Code Of Wyoming Rules, 270 000 001–8 Office of Administrative Hearings, Chapter 6, *Special Rules Relating to Driver's Licenses,* Section (b) (2008), provides:

(b) For any contested case hearing concerning Implied Consent—Administrative Per Se suspension (WYO. STAT. ANN. §§ 31–6–101 through 31-6-107), of Commercial Driver's License Implied Consent disqualification—blood alcohol concentration of four one-hundredths of one percent (0.04%) or more (WYO. STAT. ANN. § 31-7-307), the Wyoming Department of Transportation's certified record shall consist of:

(i) The peace officer's signed statement of probable cause;

(ii) The notice of suspension or disqualification;

(iii) A copy of the temporary license, if issued;

(iv) The operational checklist or chemical test result provided by the Wyoming Chemical Testing Program, Division of Health and Medical Services;

(v) A copy of the peace officer's certification if applicable;

(vi) All other evidence which is material to the matter.

[¶ 17] The broken piece of the license plate holder was material evidence in this case because it was used to identify Potvin's pickup as the offending vehicle, but not Potvin as the offending driver. The only evidence that Potvin drove, or was in actual physical control of, the vehicle was Potvin himself. Likewise, the audio recording of the field sobriety test does not appear in the record on appeal, although it too is very certainly material evidence. Moreover, it demonstrated that the investigating police officers had the capacity to tape-record the entirety of the interaction between them and Potvin. These failings serve to undermine WYDOT's report, which is the only evidence both the hearing officer and the district court had to rely upon to sustain WYDOT's case.

[¶ 18]   Nonetheless, given the entirety of the facts and circumstances called to the hearing examiner's attention, we conclude that there was substantial evidence to support the hearing examiner's ultimate finding that the police had probable cause to contact Potvin, to question him about the accident, and eventually to request that he voluntarily submit to a chemical breath or blood test, which Potvin refused.   Likewise, the record contains substantial evidence to support the hearing examiner's findings that Potvin and his roommate were not credible witnesses. We also note that the hearing examiner's conclusions were not arbitrary and capricious in light of the evidence we have set out above.

## CONCLUSION

[¶ 19]   We conclude that we must reverse the order of the district court and sustain the determination made by the hearing examiner.   This matter is remanded to the district court with directions to the district court to further remand to the hearing examiner to accomplish that result.