# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 18

**OCTOBER TERM, A.D. 2013**

**February 4, 2014**

JAMES C. McCALLIE,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel., DEPARTMENT
OF TRANSPORTATION,

Appellee
(Respondent).

No. S-13-0099

*Appeal from the District Court of Uinta County*
*The Honorable Dennis L. Sanderson, Judge*

*Representing Appellant:*
　　*Dana J. Lent, Attorney at Law, Torrington, Wyoming.*

*Representing Appellee:*
　　*Peter K. Michael, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; Jackson M. Engels, Assistant Attorney General.*

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]    The Department of Transportation disqualified James McCallie from driving commercial vehicles for one year on the basis that he had driven a commercial vehicle with a blood alcohol concentration of 0.04% or greater.[1]  After a contested case hearing, the hearing examiner upheld the disqualification.  Mr. McCallie challenges the agency's decision on appeal, claiming generally that the hearing examiner's findings of fact are unsupported by substantial evidence.  Our review of the record reveals substantial evidence supporting the hearing examiner's decision, and we will affirm.

### ISSUES

[¶2]   Mr. McCallie presents two issues:

> 1.      Were the hearing examiner's findings of fact regarding probable cause for arrest supported by substantial evidence?
>
> 2.      Was the order upholding the disqualification of Mr. McCallie's commercial driver's license supported by accurate findings of fact and substantial evidence?

### FACTS

[¶3]    Mr. McCallie drove his commercial vehicle to the port of entry near Evanston, Wyoming, at about 10:45 p.m., on September 8, 2009.  He parked and entered the office.  A port authority worker commented that Mr. McCallie smelled of alcohol.  He explained that he was using a medicated mouthwash to treat a gum infection caused by impacted wisdom teeth.  He agreed to take a portable breath test, which indicated a blood alcohol level of 0.12%.   Mr. McCallie requested a second test, which was administered approximately ten minutes later.  The second test indicated a blood alcohol level of 0.06%.

[¶4]    Believing that Mr. McCallie was driving while under the influence of alcohol, the port authority worker contacted the highway patrol.  The Trooper arrived, smelled a "moderate" amount of alcohol on Mr. McCallie's breath, and observed that his speech was "normal" but his balance was "poor."  The Trooper administered another breath test, and the result was 0.05% blood alcohol.  The Trooper asked Mr. McCallie if he had been

---

[1] Wyo. Stat. Ann. § 31-7-305(a)(ii) (LexisNexis 2009) provides that a person who drives or is in control of a commercial vehicle while his blood alcohol concentration is 0.04% or higher is disqualified from driving commercial vehicles for one year.

1

drinking, and he responded that he had been drinking the previous night, and also drank part of a beer approximately 12 hours earlier. The Trooper administered field sobriety tests, and observed that in the horizontal gaze nystagmus test Mr. McCallie displayed "maximum deviation." In the walk and turn test he "left gaps of over ½ inch on three steps, stepped offline once." In the one leg stand test he "raised arms on two occasions to maintain balance." The Trooper arrested Mr. McCallie and administered two Intoximeter tests, which showed blood alcohol levels of 0.043% and 0.04%.

[¶5]   Subsequently, the Trooper notified the Wyoming Department of Transportation of the test results.[2] The Department then notified Mr. McCallie that his commercial driver's license would be "disqualified/cancelled" for a period of one year.[3] He requested a contested case hearing to review the Department's decision, and a hearing was held before a hearing examiner. Mr. McCallie testified on his own behalf, and responded to cross-examination by the Department. The Department called no witnesses, but relied on the certified statement from the Trooper who had arrested Mr. McCallie.

[¶6]   The hearing examiner upheld the Department's decision disqualifying Mr. McCallie from driving commercial vehicles for the period of one year. Mr. McCallie petitioned for judicial review of the agency decision, and the district court affirmed the license disqualification. Mr. McCallie now brings his appeal before this Court.

***DISCUSSION***

[¶7]   Mr. McCallie contends that the Trooper in this case did not have probable cause to arrest him, and that the hearing examiner's findings of fact regarding probable cause are not supported by substantial evidence in the record. Pursuant to Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009), "we review the entire record to determine if the agency findings are supported by substantial evidence." *Bradshaw v. Wyoming Dep't of Transportation,* 2006 WY 70, ¶ 11, 135 P.3d 612, 616 (Wyo. 2006).

> Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. . . . Phrased another way, "[f]indings of fact are supported by substantial evidence if, from the evidence preserved in the

---

[2] Wyo. Stat. Ann. § 31-7-307(f) provides, in part, that if a commercial driver is administered "a test which discloses an alcohol concentration of four one-hundredths of one percent (0.04%) or more by weight of alcohol in the person's blood the peace officer shall submit a signed statement to the department."

[3] Wyo. Stat. Ann. § 31-7-307(g) provides that, "Upon receipt of the signed statement of a peace officer submitted under subsection (f) of this section, the department shall disqualify the driver from driving a commercial motor vehicle under W.S. 31-7-305 subject to the hearing provision therein."

record, we can conclude a reasonable mind might accept the evidence as adequate to support the agency findings."

*Batten v. Wyoming Dep't of Transportation*, 2007 WY 173, ¶ 7, 170 P.3d 1236, 1240 (Wyo. 2007). It is well established that, in reviewing for probable cause, we consider the "totality of the circumstances." *See, e.g., Kimsey v. Wyoming Dep't of Transportation*, 2002 WY 15, ¶ 16, 39 P.3d 425, 428 (Wyo. 2002).

> "Probable cause for a warrantless arrest exists when, under the totality of the circumstances, a prudent, reasonable, and cautious peace officer would be led to believe that a crime has been or is being committed and that the individual arrested is the perpetrator." *Keehn v. Town of Torrington*, 834 P.2d 112, 116 (Wyo. 1992). Similar to the reasonable suspicion analysis, we apply the substantial evidence standard of review to the hearing examiner's factual findings concerning whether the trooper had probable cause to arrest, but review the constitutionality of the particular seizure *de novo*.

*Batten*, ¶ 16, 170 P.3d at 1242.

[¶8]    The hearing examiner's findings of fact relating to probable cause are as follows:

> 5.    The record indicates that [Mr.] McCallie was contacted through a routine Port clearance process. Licensee appeared to be under the influence of alcohol. He was observed to have a moderate odor of alcoholic beverage and poor balance. Licensee informed the Highway Patrolman that he had consumed alcohol the night before and one beer earlier in the day.
>
> 6.    The Wyoming State Trooper administered field sobriety maneuvers to Licensee with the following results:
>
>      a.    Horizontal Gaze Nystagmus – He observed a distinct nystagmus at max deviation.
>
>      b.    Walk and Turn – Licensee left gaps of over ½ inch on three steps and stepped off line once.
>
>      c.    One Leg Stand – Licensee raised his arms on two occasions to maintain balance.

3

d. Portable Breath Test – Licensee testified that he submitted to a PBT, and the results were .05% and .12% blood alcohol content.

[¶9] In challenging these findings, Mr. McCallie contrasts the facts in his case to the facts recited in our *Bradshaw* decision. In that case, the deputy observed that Mr. Bradshaw "walked with a staggering gait, slurred his words when he spoke and smelled of alcohol." He admitted that he had "consumed four or five shots of whiskey and some beer." Field sobriety tests were administered by one deputy, and repeated by another with the same results. *Bradshaw*, ¶ 15, 135 P.3d at 617. We ruled that these facts were sufficient to establish probable cause.

[¶10] Mr. McCallie contends that the facts are weaker in his case. The Trooper's observations of Mr. McCallie were limited to the "moderate" smell of alcohol, normal speech, and poor balance. Mr. McCallie told the Trooper he had drunk alcohol the night before and part of one beer several hours earlier. Mr. McCallie also asserts that the Trooper failed to "score" his field sobriety tests, and reported the results in much less detail than in *Bradshaw*.

[¶11] With regard to the field sobriety tests, he relies on his hearing testimony that the results were affected by the caffeine he had consumed in the form of soda and pills, and that the tests were administered on an uneven and broken surface. He also points out that he performed the tests while wearing "cowboy boots with a one-inch heel." Mr. McCallie asserts that, in contrast to *Bradshaw*, the evidence in his case was insufficient to support the hearing examiner's finding of probable cause.

[¶12] However, "Our job is not to re-weigh the evidence or determine credibility of witnesses. That is the responsibility of the finder of fact." *Batten*, ¶ 20, 170 P.3d at 1243. Our responsibility is to determine whether there is substantial evidence in the record to support the agency's evaluation of the evidence. We have determined that there is.

[¶13] The Trooper came to the port of entry based on the report of a worker who believed Mr. McCallie may be driving while under the influence.[4] The Trooper's notes

---

[4] Mr. McCallie admitted at the hearing that he took two portable breath tests prior to the Trooper's arrival, with results above the legal limit. He correctly points out that there is no evidence in the record that the Trooper was aware of those results and, consequently, we disregard the results of these two tests in our review for probable cause. However, the Trooper was aware that a port authority worker suspected Mr. McCallie of driving under the influence, and that remains a fact to be considered as part of the totality of the circumstances.

4

indicate a "moderate" smell of alcohol on Mr. McCallie's breath. In *Batten*, ¶ 13, 170 P.3d at 1241, we rejected Mr. Batten's contention that a "moderate" smell of alcohol was an insufficient basis for detaining him and conducting field sobriety tests. The Trooper also noted that Mr. McCallie displayed "poor" balance, and that he admitted to drinking alcohol. The preliminary breath test administered by the Trooper indicated a blood alcohol level of 0.05%. Despite Mr. McCallie's alternative explanations, the record contains evidence that he did not perform well on the field sobriety tests. "Our case law has consistently condoned the use of field sobriety tests in determining whether probable cause exists to support an arrest." *Id*., ¶ 18, 170 P.3d at 1242.

[¶14] This constitutes substantial evidence to support the hearing examiner's findings. Furthermore, considering the totality of the circumstances, including the results of Mr. McCallie's field sobriety tests, the "moderate" smell of alcohol on his breath, his poor balance, and his admission to having consumed alcohol, we affirm the hearing examiner's determination that the Trooper had probable cause to arrest Mr. McCallie.

[¶15] As his second issue, Mr. McCallie contends that the hearing examiner's decision to uphold the license disqualification was not supported by accurate or substantial evidence. Wyo. Stat. Ann. § 31-7-305(a)(ii) provides for license disqualification for "Driving or in actual physical control of a commercial motor vehicle while the alcohol concentration of the person's blood, breath or other bodily substance is four one-hundredths of one percent (0.04%) or more." The only facts at issue under this provision are: (1) whether Mr. McCallie was driving or in control of a commercial motor vehicle; and (2) whether he had an alcohol concentration of 0.04% or more at the time.

[¶16] The record contains substantial evidence to support the hearing examiner's findings on these two facts. In his hearing testimony, Mr. McCallie admitted he was driving a commercial motor vehicle, and he does not dispute that now. There is evidence in the record that his blood alcohol level tested at 0.12%, 0.06%, 0.05%, 0.043%, and 0.04%. Based on this evidence, it was reasonable for the hearing examiner to determine that the Department had established, by a preponderance of the evidence, that Mr. McCallie was driving a commercial vehicle while the alcohol concentration of his blood was 0.04% or more.

[¶17] While Mr. McCallie acknowledges that the breath and Intoximeter tests showed blood alcohol levels above the legal limit, he maintains that this was the result of using a medicated mouthwash, not because he had been drinking. Again, however, this argument goes to the strength of the evidence. The hearing examiner considered Mr. McCallie's alternative explanation, and specifically found it was not credible. The hearing examiner relied instead on the test results, and those results provide substantial evidence supporting the determination that Mr. McCallie had been driving while his blood alcohol level was above the 0.04% limit.

5

[¶18] We therefore affirm the hearing examiner's decision, but we also find it necessary to respond to Mr. McCallie's argument that the hearing examiner's findings of fact are inaccurate. The first finding of fact states that Mr. McCallie was cited on "September 8, 2008." While he arrived at the port of entry late on the night of September 8, the record is clear that he was cited on September 9. The second finding of fact states that the test administered by the Trooper "indicated a blood alcohol content of .07%." Mr. McCallie admitted to test results of 0.12%, 0.06%, 0.05%, 0.043%, and 0.04%, but there is no evidence that he ever tested at a level of 0.07%. Paragraph 10 includes the finding that "The Trooper's testimony is consistent and is credible." The Trooper did not testify.

[¶19] While we cannot condone such inaccuracies, we are convinced that the errors are harmless and do not require us to reverse the hearing examiner's decision. It is of no legal significance in this case whether Mr. McCallie was cited on September 8 or September 9. There is no evidence that Mr. McCallie tested at a blood alcohol level of 0.07%, but there is substantial evidence that he was driving with a blood alcohol level above 0.04%, and the hearing examiner recited the correct test results in other parts of the order. It was not necessary for the Trooper to testify because the Department relied on his certified statement.

[¶20] Affirmed.