# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 116

OCTOBER TERM, A.D. 2021

October 22, 2021

RICKY D. JOHNSON,

Appellant
(Petitioner),

v.

STATE OF WYOMING ex rel.,
WYOMING DEPARTMENT OF
TRANSPORTATION,

Appellee
(Respondent).

S-21-0093

*Appeal from the District Court of Park County*
*The Honorable Bobbi Overfield, Judge*

*Representing Appellant:*

    *Stephen Joseph Darrah, Darrah Law Office, P.C., Powell, Wyoming; R. Michael Vang, R. Michael Vang, P.C., Laramie, Wyoming.*

*Representing Appellee:*

    *Bridget L. Hill, Attorney General; Misha Westby, Deputy Attorney General; Michael T. Kahler, Senior Assistant Attorney General; Ryan J. Thompson, Assistant Attorney General.*

*Before FOX, C.J., and DAVIS, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Powell police arrested Ricky D. Johnson for driving while under the influence of alcohol in violation of Wyo. Stat. Ann. § 31-5-233.  A breath test showed his blood alcohol content was above the legal limit.  Mr. Johnson was advised of his right to obtain an independent chemical test at his own expense, and he chose to exercise it.  Officers transported him to the Powell Valley Healthcare Emergency Room, but he never obtained the test.  His license suspension was affirmed after a hearing before the Office of Administrative Hearings (OAH) and by the district court.  We affirm.

## ISSUES

[¶2]    The dispositive issues are:

> I.    Whether substantial evidence supports the OAH's fact finding that law enforcement officers did not interfere with Mr. Johnson's right to obtain an independent blood test under Wyo. Stat. Ann. §§ 31-6-102(a)(ii)(C) and 31-6-105(d).

> II.    Whether the statutes and substantive due process required law enforcement officers to do more than allow Mr. Johnson to go to the nearest hospital or clinic to obtain a test.

## FACTS

[¶3]    Powell Police Officer Danny Hite stopped Mr. Johnson after he observed him fail to signal a turn and fail to maintain a single lane of travel.  Mr. Johnson admitted to drinking several beers before driving.  After Mr. Johnson failed a roadside sobriety test, Officer Hite arrested him for DWUI under Wyo. Stat. Ann. § 31-5-233(b)(i) and transported him to the Powell Law Enforcement Center.  Mr. Johnson was read the Wyoming implied consent advisement pursuant to Wyo. Stat. Ann. § 31-6-102, and he submitted to a chemical breath test which indicated his blood alcohol concentration (BAC) was 0.150%, which exceeded the legal limit (0.08%).  He was advised he could, at his own expense, "have any qualified person of his own choosing administer a chemical test or tests" pursuant to Wyo. Stat. Ann. § 31-6-105(d).[1]  Mr. Johnson requested his own

---

[1] The statutes provide:
>    (a) If arrested for an offense as defined by W.S. 31-5-233:
>        (i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the

1

blood test, and officers transported him to the Powell Valley Healthcare Emergency Room.

[¶4]    The nurse testified that when law enforcement officers arrived at the hospital with Mr. Johnson, the nurse was confused because "normally [the officers] have a kit . . . and it's secured in front of the patient and the nurse and the officer.  And then they . . . package it all up, seal it up, and they send it to their lab . . . to be tested."  The nurse was also concerned about chain of custody, because he said the officers indicated Mr. Johnson would take the sample with him to jail and have it tested on his own later.  Although this confusion was never resolved, the parties disagree whether it was the reason Mr. Johnson did not obtain a test.

[¶5]    Sergeant Sapp, who was present during Mr. Johnson's arrest and hospital visit, testified that Mr. Johnson appeared confused about why he was at the hospital because each time he told Mr. Johnson that the officers did not require him to provide a blood sample he responded, "That's okay, I'll give you guys whatever you need."  Sergeant Sapp testified, once Mr. Johnson understood he was not required to have his blood drawn, he said, "Oh, . . . if you don't need my blood, then let's go."  At that point, Sergeant Sapp said, "Okay, I guess we aren't drawing blood," placed Mr. Johnson back in handcuffs, and took him to jail.

[¶6]    Mr. Johnson testified that he understood he was at the hospital because he had requested his own blood test and that it was not required by the officers.  He testified the nurse requested the officers provide the Wyoming Chemical Testing Program (WCTP) approved blood sample kit, which is supplied to law enforcement officers, but the officers refused to provide it and then unilaterally decided he would not get his own blood test.

purpose of determining the alcohol concentration or controlled substance content of his blood. . . .
(ii) For tests required under this act, the arrested person shall be advised that:

. . .

(C) After undergoing all chemical tests required by the peace officer at a place and in a manner prescribed by and at the expense of the agency employing the peace officer, the arrested person may go to the nearest hospital or clinic and secure any additional tests at his own expense[.]

Wyo. Stat. Ann. § 31-6-102(a)(ii)(C) (LexisNexis 2021).

(d) The person tested may, at his own expense, have any qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a peace officer.  The failure or inability to obtain an additional test by a person does not preclude the admissibility in evidence of the test or tests taken at the direction of a peace officer.

Wyo. Stat. Ann. § 31-6-105(d).

Mr. Johnson contends he never revoked his request for an independent chemical blood test.

[¶7]    The Wyoming Department of Transportation suspended Mr. Johnson's driver's license for 90 days, and Mr. Johnson requested a contested case hearing. The hearing examiner weighed Officer Hite's documentation showing Mr. Johnson withdrew his request for an independent chemical blood test against Mr. Johnson's testimony that he was denied the test. The hearing examiner found Officer Hite's report more reliable and credible than Mr. Johnson's testimony because it was made shortly after the incident, and because Mr. Johnson was under the influence of alcohol at the time. The hearing examiner determined the Department of Transportation made a prima facie showing that Mr. Johnson's chemical test was administered in accordance with the law, therefore the test was valid and showed he had a BAC over the legal limit. The OAH upheld Mr. Johnson's suspension, and Mr. Johnson appealed to the district court. *Johnson v. State ex rel., Wyo. Dep't of Transp.* [*Johnson I*], 2020 WY 19, ¶ 4, 458 P.3d 40, 42 (Wyo. 2020).

[¶8]    At the same time, Mr. Johnson filed a petition requesting the district court declare that law enforcement officers violated his statutory and due process rights to independent testing. *Id.* at ¶ 5, 458 P.3d at 42. The district court stayed Mr. Johnson's license suspension while it considered his declaratory judgment action, which it then dismissed. *Id.* We affirmed that dismissal on appeal. *Id.* at ¶ 16, 458 P.3d at 46.

[¶9]    The district court lifted the stay on Mr. Johnson's administrative appeal and granted the parties' stipulated motion to present additional evidence to the OAH. The court remanded the case to the OAH to take additional evidence in continuation of the contested case hearing. After receiving that evidence,[2] the OAH entered its order upholding the suspension of Mr. Johnson's license. Mr. Johnson petitioned the district court for review. The district court affirmed the OAH order and found that Mr. Johnson's due process rights had not been violated, and Mr. Johnson appealed.

### STANDARD OF REVIEW

[¶10] "We review an appeal from the district court's review of an administrative agency's decision as if it had come directly from the agency and give no deference to the district court's decision." *Painter v. Hallingbye*, 2021 WY 78, ¶ 10, 489 P.3d 684, 688 (Wyo. 2021) (citing *Mirich v. State ex rel. Bd. of Tr. of Laramie Cnty. Sch. Dist. Two*, 2021 WY 32, ¶ 15, 481 P.3d 627, 632 (Wyo. 2021)). This Court's review of an

---

[2] At the supplemental hearing, the OAH considered the testimony and affidavit of an EMT who witnessed Mr. Johnson's visit to the hospital, Mr. Johnson's medical record from that night, Sergeant Sapp's testimony and supplemental police report, and testimony from Mr. Johnson.

administrative agency decision is limited to a determination of matters specified in Wyo. Stat. Ann. § 16-3-114(c), which provides:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . .
>
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> > > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> > > (B) Contrary to constitutional right, power, privilege or immunity;
> > > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> > > (D) Without observance of procedure required by law; or
> > > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

(LexisNexis 2021); W.R.A.P. 12.09(a). Whether Mr. Johnson was afforded his statutory and due process rights is a mixed question of fact and law. We review an agency's fact findings to determine whether they are supported by substantial evidence. *Painter*, 2021 WY 78, ¶ 11, 489 P.3d at 689 (citing *Exaro Energy III, LLC v. Wyo. Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 10, 455 P.3d 1243, 1248 (Wyo. 2020)). We review the OAH's conclusion of law that Mr. Johnson's statutory rights were not violated de novo. *Painter*, 2021 WY 78, ¶ 10, 489 P.3d at 689 (quoting *Hayse v. Wyo. Bd. of Coroner Standards*, 2020 WY 4, ¶ 4, 455 P.3d 267, 270 (Wyo. 2020)). Likewise, we review the district court's conclusion that Mr. Johnson's substantive due process rights were not violated de novo. *WyoLaw, LLC v. Off. of Att'y Gen., Consumer Prot. Unit*, 2021 WY 61, ¶ 33, 486 P.3d 964, 974 (Wyo. 2021) (quoting *Sam v. State*, 2017 WY 98, ¶ 76, 401 P.3d 834, 859 (Wyo. 2017) ("Issues of constitutionality present questions of law, which we review de novo.")); *see also Johnson I*, 2020 WY 19, ¶ 10, 458 P.3d at 44 ("[A]dministrative agencies have no authority to rule on the constitutionality of statutes.").

## DISCUSSION

***I.   Substantial Evidence Supports the OAH's Fact Finding that Law Enforcement Officers Did Not Interfere With Mr. Johnson's Right to Obtain an Independent Blood Test Under Wyo. Stat. Ann. §§ 31-6-102(a)(ii)(C) and 31-6-105(d)***

[¶11]  Mr. Johnson contends officers deprived him of his rights by failing to provide their chemical testing kit to the hospital and by unilaterally deciding he would not get a blood test.   We review the entire record to determine whether the OAH's finding that Mr. Johnson was not prevented from obtaining a chemical test of his blood under Wyoming statutes §§ 31-6-102(a)(ii)(C) and 31-6-105(d) is supported by substantial evidence. *McCallie v. State ex rel., Dep't of Transp.*, 2014 WY 18, ¶ 7, 317 P.3d 1142, 1144 (Wyo. 2014).   "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions.   It is more than a scintilla of evidence." *Painter*, 2021 WY 78, ¶ 11, 489 P.3d at 689 (quoting *Exaro*, 2020 WY 8, ¶ 10, 455 P.3d at 1248).   "Because the agency, as the trier of fact, weighs the evidence and determines witness credibility, we defer to its factual findings unless they are 'clearly contrary to the overwhelming weight of the evidence on the record.'" *Painter*, 2021 WY 78, ¶ 11, 489 P.3d at 689 (quoting *Mirich*, 2021 WY 32, ¶ 16, 481 P.3d at 633).   "[O]ur review turns on whether the agency could reasonably conclude as it did, based on the evidence before it—not whether we agree with the outcome." *Painter*, 2021 WY 78, ¶ 11, 489 P.3d at 689 (citing *Mirich*, 2021 WY 32, ¶ 16, 481 P.3d at 633).

[¶12]  The hearing examiner found Mr. Johnson asked for a chemical blood test, but he changed his mind when he realized the blood sample was not required by the officers. She relied on Officer Hite's report for this finding because there was no audio or video recording of the events at the hospital, because she found the report reliable and credible, and because it was corroborated by Sergeant Sapp's testimony.   She also found Mr. Johnson's version of events less credible because he was under the influence of alcohol when he was at the hospital, and the EMT's testimony and affidavit less credible because the affidavit was prepared over three months after the events, while Officer Hite's report was prepared shortly after.   Mr. Johnson contests these findings in three ways.

[¶13]  First, Mr. Johnson claims the OAH improperly gave undue weight to Officer Hite's report even though Officer Hite did not testify.   "However, '[o]ur job is not to re-weigh the evidence or determine credibility of witnesses.   That is the responsibility of the finder of fact.'" *McCallie*, 2014 WY 18, ¶ 12, 317 P.3d at 1145 (quoting *Batten v. Wyo. Dep't of Transp. Drivers' License Div.*, 2007 WY 173, ¶ 20, 170 P.3d 1236, 1243 (Wyo. 2007)).   "If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test." *Wyo. Dep't of Transp. v. Potvin*, 2011 WY 17, ¶ 4, 247 P.3d 54, 57

(Wyo. 2011). We do not disturb the hearing examiner's determination that Officer Hite's and Sergeant Sapp's sworn testimony is more credible than the evidence Mr. Johnson offered.

[¶14] Second, Mr. Johnson argues the OAH's finding that he was under the influence, which informed its credibility determination, was not based on sufficient evidence. He suggests the finding was based only on the result of his breath test and his admission that he had consumed alcohol. But in addition to his breath test result, the hearing examiner cited Officer Hite's full arrest report, the hospital record, and Sergeant Sapp's testimony. Officer Hite's report noted that Mr. Johnson's vehicle smelled strongly of an alcoholic beverage; he moved slowly and deliberately and had difficulty retrieving his license and insurance; his eyes were bloodshot and watery; his speech was slurred and difficult to understand; and, when he exited his vehicle, Mr. Johnson staggered. The report showed Mr. Johnson failed the horizontal-gaze-nystagmus, walk-and-turn, and stand-on-one-leg tests. Mr. Johnson's medical record noted his "downcast gaze, markedly dulled mentation, drowsy affect, [and the] odor [of alcohol]." Finally, Sergeant Sapp testified that he had interacted with Mr. Johnson on a number of occasions, and in comparison with those occasions, Mr. Johnson seemed intoxicated on the night he was arrested. All this adds up to "evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Painter*, 2021 WY 78, ¶ 11, 489 P.3d at 689.

[¶15] Third, Mr. Johnson contends that, because Officer Hite turned off his body camera during the events at the hospital, he is "entitled to an inference that a preserved recording would have supported his witnesses' version of events." Most of the cases he cites in support of this proposition are distinguishable because they involve destruction of evidence, *see People v. Kladis*, 960 N.E.2d 1104, 1106 (Ill. 2011); *State v. Burden*, 17 P.3d 1211, 1214 (Wash. 2001); *Thorne v. Dep't of Pub. Safety, State of Alaska*, 774 P.2d 1326, 1328 (Alaska 1989), or evidence that the State failed to disclose. *Potvin*, 2011 WY 17, ¶¶ 13, 17, 247 P.3d at 59 (Recording of field sobriety test did not appear in the record on appeal. Court acknowledged the recording was "very certainly material evidence" of the officers' probable cause to arrest the defendant, and still found substantial evidence to affirm probable cause finding.); *Hensley v. State*, 2002 WY 96, ¶ 11, 48 P.3d 1099, 1103 (Wyo. 2002); *Davis v. State*, 2002 WY 88, ¶ 16, 47 P.3d 981, 985 (Wyo. 2002). In Mr. Johnson's case, there was never a video, so there is no basis for any inference that might arise from its destruction or withholding.

[¶16] Mr. Johnson's reliance on *State of Maryland v. Werkheiser*, 474 A.2d 898, 900 (Md. App. Ct. 1984), is also misplaced. There, officers did not draw blood from an unconscious driver despite the mandatory language of the Maryland statute. The court agreed with the defendant that he was entitled to an inference that if they had drawn blood, the test results would have been favorable to the defendant. 474 A.2d at 903.

6

Although a bodycam video is desirable, there is no statute mandating it and therefore no basis for the inference applied in *Werkheiser*.

[¶17] There is substantial evidence to support the hearing examiner's finding the law enforcement officers did not interfere with Mr. Johnson's right to obtain an independent blood test.

***II.    The Statutes and Substantive Due Process Do Not Require Law Enforcement Officers to Do More Than Allow Mr. Johnson to Go to the Nearest Hospital or Clinic to Obtain a Test***

[¶18] Mr. Johnson contends he had a "statutory and substantive due process right to require law enforcement to make reasonable efforts to accommodate his request for an independent blood draw . . . by simply providing [the nurse] with the WCTP's approved blood testing kit." We review agency and district court conclusions of law de novo. *Painter*, 2021 WY 78, ¶ 10, 489 P.3d at 689; *WyoLaw*, 2021 WY 61, ¶ 33, 486 P.3d at 974.

[¶19] Wyoming's implied consent law provides that, when an officer carries out a chemical test under the statute, the arrested person shall be advised that failing the test could result in the loss of driving privileges for ninety days, and that "[a]fter undergoing all chemical tests required by the peace officer . . . the arrested person may go to the nearest hospital or clinic and secure any additional tests at his own expense." Wyo. Stat. Ann. §§ 31-6-102(a)(ii)(C). "The failure or inability to obtain an additional test by a person does not preclude the admissibility in evidence of the test or tests taken at the direction of a peace officer." Wyo. Stat. Ann. § 31-6-105(d).

[¶20] When we construe a statute, "'we seek the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute,' giving effect to every word, clause, and sentence." *Bernal-Molina v. State*, 2021 WY 90, ¶ 13, 492 P.3d 904, 908 (Wyo. 2021) (quoting *Blevins v. State*, 2017 WY 43, ¶ 27, 393 P.3d 1249, 1256 (Wyo. 2017)). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *EME Wyoming, LLC v. BRW E., LLC*, 2021 WY 64, ¶ 23, 486 P.3d 980, 987 (Wyo. 2021) (quoting *Adekale v. State*, 2015 WY 30, ¶ 12, 344 P.3d 761, 765 (Wyo. 2015)).

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and

7

rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*EME*, 2021 WY 64, ¶ 23, 486 P.3d at 987 (quoting *Wyo. Jet Center, LLC v. Jackson Hole Airport Bd.*, 2019 WY 6, ¶ 12, 432 P.3d 910, 915 (Wyo. 2019)). The statutory language is clear and unambiguous, and conveys a specific and obvious meaning: that a person undergoing a police-administered BAC test has a right to be informed he may obtain a test of his own, and if he requests such a test, he may go to the nearest hospital or clinic to seek one. If the legislature intended to obligate law enforcement officers to further facilitate a test, it would have said so. Read together, the statutes say he "*may go . . .* and secure *any* additional tests" but the "*failure or inability* to obtain an additional test" has no bearing on an officer's own test. It is not an officer's responsibility to ensure he obtains any test.

[¶21] Despite the plain language of the statute, Mr. Johnson argues that substantive due process required the officers to do more, and that by "failing" to provide the nurse with the sampling kit that law enforcement officers use for their own purposes, he was denied the "reasonable means" and "a meaningful opportunity" to protect his statutory right. The Fifth and Fourteenth Amendments to the federal constitution "proclaim that '[n]o person shall be deprived of life, liberty or property without due process of law.'" *Laughter v. Bd. of Cnty. Comm'rs for Sweetwater Cnty.*, 2005 WY 54, ¶ 42, 110 P.3d 875, 887 (Wyo. 2005); *see also Moreno v. State, Dep't of Revenue & Tax'n*, 775 P.2d 497, 500 (Wyo. 1989). "The constitutional principle of 'due process' has both a procedural aspect and a substantive aspect." *Laughter*, 2005 WY 54, ¶ 42, 110 P.3d at 887 (citing *Moreno*, 775 P.2d at 500). Substantive due process claims are of two types. *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997).

> The first type includes claims asserting a denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under "the Fourteenth Amendment *simpliciter*."
>
> . . .
>
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of "shocks the conscience" of the court.

*Id.* (quoting *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996)). Mr. Johnson's claim is the first type, because he asserts the actions of the officers denied him a right secured by statute.

[¶22] Once again, the cases Mr. Johnson cites in support of his argument are easily distinguishable. In *State v. McNichols*, 906 P.2d 329, 334 (1995), the court held, "While 'law enforcement authorities have no duty to volunteer to arrange for testing, they must not thwart an accused's attempts to make such arrangements.'" (citation omitted). We have found sufficient evidence to affirm the OAH finding that law enforcement officers did not thwart Mr. Johnson's attempt to arrange for independent testing. *See Gundersen v. Municipality of Anchorage*, 792 P.2d 673, 677 (Alaska 1990) (where State failed to preserve the breath sample, defendant's due process rights were preserved with notice of his statutory right to an independent test); *State v. Olcan*, 61 P.3d 475, 478 (Ariz. Ct. App. 2003) ("The difficulties of obtaining an independent test do not violate a defendant's rights if those difficulties are not created by the State."); *see also State v. Braunecker*, 566 S.E.2d 409, 410 (2002) ("Law enforcement officers have a . . . duty not to refuse or fail to allow an accused to exercise the right to have an independent test."); *State v. George*, 754 P.2d 460, 464 (1988) (State "may not unreasonably interfere with a suspect's reasonable attempts to secure an additional test . . . .").

## *CONCLUSION*

[¶23] Because law enforcement officers did not deprive Mr. Johnson of his right to an independent chemical test of his blood alcohol content, his statutory and due process rights were not violated. Affirmed.